**Case No. 21-50715**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Students for Fair Admissions, Incorporated,
   *Plaintiff-Appellant*

v.

University of Texas at Austin; James B. Milliken, Chancellor of the University of Texas System in his Official Capacity; Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity; Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity; Jay Hartzell, Interim President of the University of Texas at Austin in his Official Capacity; Board of Regents of the Texas State University System; David J. Beck, Member of the Board of Regents in his Official Capacity; Christina Melton Crain, Member of the Board of Regents in her Official Capacity; Kevin P. Eltife, Member of the Board of Regents in his Official Capacity; R. Steven Hicks, Member of the Board of Regents in his Official Capacity; Jodie Lee Jiles, Member of the Board of Regents in his Official Capacity; Janiece Longoria, Member of the Board of Regents in her Official Capacity; Nolan Perez, Member of the Board of Regents in his Official Capacity; Kelcy L. Warren, Member of the Board of Regents in his Official Capacity and James C. (Rad) Weaver, Member of the Board of Regents in his Official Capacity; Daniel Jaffe, Interim Executive Vice President and Provost; Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student Success; and Miguel Wasielewski, Executive Director for Office of Admissions,
   *Defendants-Appellees*

The Black Student Alliance; The Texas Orange Jackets; Texas NAACP; Adaylin Alvarez; Morgan Bennett; Liz Kufour; Brianna Mallorie McBride; Desiree Ortega-Santiago; Nima Rahman; Alexandra Trujillo, Rosaleen Xiong,
   *Intervenor Defendants-Appellees*

On Appeal from the United States District Court Western District of Texas, Austin Division, Civil Action No. 1:20-cv-00763

## BRIEF OF DEFENDANTS-APPELLEES

[Counsel listed on following page]

Matthew C. Powers
Texas Bar No. 2406650
William Christian
Texas Bar No. 00735905
Marianne W. Nitsch
Texas Bar No. 24098182
GRAVES, DOUGHERTY,
HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: (512) 480-5600
Facsimile: (512) 480-5804
Email: mpowers@gdhm.com
Email: wchristian@gdhm.com
Email: mnitsch@gdhm.com

**Counsel for Defendants-Appellees
University of Texas at Austin, et al.**

# CERTIFICATE OF INTERESTED PERSONS

No. 21-50715

*Students for Fair Admissions, Inc. v. University of Texas at Austin, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal:

Plaintiff-Appellant

    Students for Fair Admissions, Inc.

    Consovoy McCarthy PLLC, Counsel for Appellant
        William S. Consovoy
        Thomas R. McCarthy
        J. Michael Connolly
        Cameron T. Norris
        Steven C. Begakis

Defendants-Appellees

    Board of Regents of the University of Texas System[1] and the following officials:
        Christian Melton Crain, Regent
        Kevin P. Eltife, Regent
        R. Steven Hicks, Regent
        Jodie Lee Jiles, Regent
        Janiece Longoria, Regent
        Nolan Perez, Regent

---

[1] The caption to the case misnames the Board as Board of Regents of the Texas State University System. The correct title is Board of Regents of the University of Texas System.

Stuart W. Stedman,* Regent[2]
Kelcy L. Warren, Regent
James C. "Rad" Weaver, Regent
James B. Milliken, Chancellor
Archie L. Holmes, Jr.,* Executive Vice Chancellor for Academic
    Affairs
Daniel H. Sharphorn, Vice Chancellor and General Counsel

University of Texas at Austin and the following officials:
    Jay Hartzell, President
    Sharon L. Wood,*  Executive Vice President and Provost
    Carolyn Connerat,* Interim Vice Provost for Enrollment
        Management
    Miguel Wasielewski, Executive Director of Admissions

Graves, Dougherty, Hearon & Moody, P.C., Counsel for Defendants-
    Appellees
    John J. McKetta, III
    Matthew C. Powers
    Marianne W. Nitsch
    William Christian

<u>Intervenors-Appellees</u>

Texas National Association for the Advancement of Colored People
Black Student Alliance
Texas Orange Jackets
Adaylin Alvarez
Morgan Bennett
Brianna Mallorie McBride
Liz Kufour
Desiree Ortega-Santiago
Nima Rahman
Alexandra Trujillo
Rosaleen Xiong

---

[2]    Appellees list in this certificate the persons currently holding the offices that are named as official-capacity defendants. An asterisk denotes a change in the person holding the office from the time this suit was originally filed. For example, Stuart W. Stedman has replaced David J. Beck as a Regent.

Hunton Andrews Kurth, L.L.P., Counsel for Intervenors-Appellees
    Brian C. Pidcock
    Carter C. Simpson
    Neil K. Gilman
    Ryan P. Phair

The Lawyers' Committee For Civil Rights Under Law, Counsel for
    Intervenors-Appellees
    David G. Hinojosa
    Genevieve Bonadies Torres

                                      */s/ Matthew C. Powers*
                                      Attorney of Record for
                                      Defendants-Appellees
                                      University of Texas at Austin, et al.

## STATEMENT REGARDING ORAL ARGUMENT

In accordance with Federal Rule of Appellate Procedure 34(a) and Fifth Circuit Rule 28.2.3, Defendants-Appellees respectfully request oral argument. This appeal involves important questions concerning federal standing jurisprudence, the resolution of which would be substantially aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................... 3

STATEMENT REGARDING ORAL ARGUMENT .................................................. 6

TABLE OF AUTHORITIES ............................................................................................. 8

ISSUES PRESENTED .......................................................................................................... 13

STATEMENT OF THE CASE ........................................................................................ 14

SUMMARY OF THE ARGUMENT ............................................................................. 16

ARGUMENT ......................................................................................................................... 18

    I.   SFFA Lacks Associational Standing to Pursue Its Claims .................................. 18

        A.  As an organization with "no members" under its articles of incorporation, SFFA must demonstrate "indicia of membership" to invoke associational standing ........................................................................... 19

        B.  The courts in *Harvard* and *UNC* never addressed the direct conflict between SFFA's articles of incorporation and bylaws ................................. 24

        C.  SFFA does not satisfy the indicia-of-membership test ............................... 26

            1.   SFFA's leadership is not member-elected ............................................ 27

            2.   SFFA lacks member service in the organization .................................. 29

            3.   Less than four percent of SFFA's funding comes from members ..... 30

        D.  This case must be dismissed for lack of subject matter jurisdiction ........... 32

    II.  Res Judicata Bars SFFA's Claims .......................................................................... 32

        A.  SFFA and Abigail Fisher are in privity ......................................................... 34

        B.  This case and *Fisher* involve the same claim or cause of action ................... 42

    III. SFFA's Claims Are Barred By Collateral Estoppel .............................................. 47

CONCLUSION AND RELIEF REQUESTED .......................................................... 50

CERTIFICATE OF COMPLIANCE ............................................................................ 51

CERTIFICATE OF SERVICE ........................................................................................ 51

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE**

*AARP v. United States Equal Emp't Opportunity Comm'n,*
    226 F. Supp. 3d 7 (D.D.C. 2016) .......................................................... 29

*Adams v. City of Indianapolis,*
    742 F.3d 720 (7th Cir. 2014).......................................................45-46

*Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.,*
    20 F.3d 663 (5th Cir. 1994)................................................... 46

*Am. Postal Workers Union Columbus Area Local v. U.S. Postal Service,*
    736 F.2d 317 (6th Cir. 1984).................................................. 38

*Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental
Retardation Ctr. Bd. of Trustees,*
    19 F.3d 241 (5th Cir. 1994)................................................... 27

*Baldwin v. Iowa State Traveling Men's Assn.,*
    283 U.S. 522 (1931)............................................................ 32

*Certain Underwriters at Lloyd's, London v. Axon Pressure Products Inc.,*
    951 F.3d 248 (5th Cir. 2020)......................................................47-48

*Cichocki v. Mass. Bay Cmty. Coll.,*
    199 F. Supp. 3d 431 (D. Mass. 2016) .................................... 36

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.,*
    686 F. Supp. 2d 663 (E.D. La. 2010) ...................................... 31

*Diamond v. Charles,*
    476 U.S. 54 (1986)............................................................. 24

*Duffie v. United States,*
    600 F.3d 362 (5th Cir. 2010)................................................. 47

*Ferris v. Cuevas,*
    118 F.3d 122 (2d Cir. 1997) .........................................38, 39, 40

*Fisher v. University of Texas at Austin (Fisher I),*
    570 U.S. 297 (2013)........................................................... 49

*Fisher v. University of Texas at Austin (Fisher II)*,
    136 S. Ct. 2198 (2016) .................................................................14, 33-34, 46, 48, 49

*Friends of the Earth v. Chevron Chem. Co.*,
    129 F.3d 826 (5th Cir. 1997)......................................................16, 19, 21-22, 27, 30

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
    695 F.3d 330 (5th Cir. 2012)......................................................19-20, 26-27, 30-31

*Gonzalez v. Banco Cent. Corp.*,
    27 F.3d 751 (1st Cir. 1994) .......................................................................37, 38, 40

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)................................................................................................ 43

*Havercombe v. Dep't of Educ. of Com. of P.R.*,
    250 F.3d 1 (1st Cir. 2001)....................................................................................... 44

*Hernandez v. City of Lafayette*,
    699 F.2d 734 (5th Cir. 1983)............................................................................ 43, 46

*Hopwood v. Texas*,
    78 F.3d 932 (5th Cir. 1996) .................................................................................... 43

*Houston Prof'l Towing Ass'n v. City of Houston*,
    812 F.3d 443 (5th Cir. 2016).................................................................................. 45

*HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*,
    907 F.3d 199 (5th Cir. 2018).................................................................................. 19

*Hunt v. Wash. State Apple Advertising Comm'n*,
    432 U.S. 333 (1977)............................................................................. 18, 26-28, 30

*Jackson v. De Soto Parish School Board*,
    585 F.2d 726 (5th Cir. 1978).................................................................................. 46

*Johnson v. City of Houston*,
    444 F. App'x 26 (5th Cir. 2011) ............................................................................ 41

*Keystone Shipping Co. v. New England Power Co.*,
    109 F.3d 46 (1st Cir. 1997) ................................................................................... 49

*Leon v. Martin*,
    79 Va. Cir. 434 (Va. Cir. Ct. 2009) ....................................................................... 21

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*,
    11 F.4th 345 (5th Cir. 2021) ................................................................. 19

*Meza v. Gen. Battery Corp.*,
    908 F.2d 1262 (5th Cir. 1990)................................................................ 37

*Montana v. United States*,
    440 U.S. 147 (1979)...........................................................................32-33

*Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*,
    975 F.2d 683 (10th Cir. 1992) ............................................................... 40

*Pace v. Bogalusa City Sch. Bd.*,
    403 F.3d 272 (5th Cir. 2005).................................................................. 48

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
    No. CIV.A. 83-513, 1984 WL 6618 (D.N.J. Sept. 25, 1984) ........................ 28, 29

*Petro-Hunt, L.L.C. v. United States*,
    365 F.3d 385 (5th Cir. 2004).................................................................. 42

*Phelps v. Hamilton*,
    122 F.3d 1309 (10th Cir. 1997) .............................................................. 37

*Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*,
    123 F.3d 111 (3d Cir. 1997) ...............................................................21-22

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*,
    490 F.3d 86 (1st Cir. 2007) ................................................................... 50

*Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*,
    274 F. App'x 399 (5th Cir. 2008) ........................................................... 48

*Russell v. SunAmerica Sec. Inc.*,
    962 F.2d 1169 (5th Cir. 1992)............................................................35, 41

*Shults v. Texas*,
    762 F.2d 449 (5th Cir. 1985).................................................................. 45

*In re Southmark Corp.*,
    163 F.3d 925 (5th Cir. 1999).............................................................34, 42

*Southmark Props. v. Charles House Corp.*,
    742 F.2d 862 (5th Cir. 1984).................................................................. 35

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    980 F.3d 157 (1st Cir. 2020) ...............................................24-26

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    261 F. Supp. 3d 99 (D. Mass. 2017) ...............................24-26

*Students for Fair Admissions, Inc. v. Univ. of N. Carolina*,
    No. 1:14CV954, 2018 WL 4688388 (M.D.N.C. Sept. 29, 2018)...................24-26

*Swate v. Hartwell*,
    99 F.3d 1282 (5th Cir. 1996) ............................................. 34

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) .....................................................36, 41

*Tex. Indigenous Council v. Simpkins*,
    No. SA-11-CV-315-XR, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014).............. 32

*United States v. Am. Ry. Exp. Co.*,
    265 U.S. 425 (1924)......................................................... 48

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
    412 U.S. 669 (1973)......................................................... 29

*Wilson v. Lynaugh*,
    878 F.2d 846 (5th Cir. 1989)............................................... 43

**STATUTES**

Tex. Educ. Code § 51.803 ....................................................... 14

Tex. Educ. Code § 51.805 ....................................................... 14

Va. Code § 13.1-819 .........................................................21, 23

Va. Code § 13.1-823 ............................................................ 21

Va. Code § 13.1-837 ............................................................ 20

Va. Code § 13.1-845 ............................................................ 23

## OTHER AUTHORITIES

RESTATEMENT (SECOND) OF JUDGMENTS § 24 ................................................................ 42

J. MOORE, MOORE'S FEDERAL PRACTICE (2d ed. 1983) .................................................. 35

C. WRIGHT & A. MILLER,
    FEDERAL PRACTICE AND PROCEDURE (2d ed. 2021) .............................. 19, 35, 37

# ISSUES PRESENTED

1. Does SFFA have associational standing?

2. Are SFFA's claims barred by res judicata?

3. Are SFFA's claims barred by collateral estoppel?

## STATEMENT OF THE CASE

This case is a suit for injunctive and declaratory relief challenging the admissions policy of the University of Texas at Austin ("UT-Austin"). For 75% of each entering freshman class, UT-Austin grants automatic admission to Texas students who graduate in the top percentages of their high school class. Tex. Educ. Code § 51.803(a-1). The rest of the class is admitted through a holistic-review process that includes an applicant's race and ethnicity among a number of factors. *Id.* §§ 51.803(k), 51.805.

In *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016), the Supreme Court rejected claims that this admissions process violates the Constitution, holding that race is only a "factor of a factor of a factor," and is considered "contextual[ly] and does not operate as a mechanical plus factor for underrepresented minorities." *Id.* at 2207. The plaintiff in that case was Abigail Fisher, who had been denied admission to UT-Austin in 2008. Edward Blum, though not himself a plaintiff, was the self-proclaimed "architect" of the lawsuit. ROA.857. He had hand-picked Fisher to serve as the named plaintiff, connected her with lawyers of his choosing, and coordinated the lawsuit's funding through a political advocacy organization for which he was president, executive director, and co-founder. ROA.895:9-898:15, 902:3-902:24, 904:17-904:20.

In 2014, while the *Fisher* litigation was still ongoing, Blum, along with Abigail Fisher and her father Richard Fisher, founded Students for Fair Admissions, a

nonprofit corporation, with the goal of ending the consideration of race in university admissions. SFFA's articles of incorporation state that SFFA "shall have no members." ROA.1041. But SFFA's bylaws provide that SFFA "shall have one class of members, referred to as General Members, which shall not be 'members' within the meaning of the [Virginia Nonstock Corporation] Act." ROA.1087.

Blum and the Fishers were the initial three directors of SFFA and remain as directors today. ROA.823:1-823:7. In 2015, the board was expanded to include two additional members. ROA.841:4-841:11. Blum and the Fishers are each also officers of SFFA; Blum is the president, Abigail Fisher is the secretary, and Richard Fisher is the treasurer. ROA.822:20-822:25. SFFA has no employees, ROA.830:12-830:15, and Blum handles the day-to-day operations of the organization out of his personal residence. ROA.833:14-833:20, 907:22-908:1.

About a year after the Supreme Court's decision in *Fisher*, SFFA began filing lawsuits against UT-Austin challenging the legality of the same admissions policy. SFFA first filed a lawsuit in Texas state court against UT-Austin, ROA.952, which was dismissed for lack of standing. ROA.974. SFFA then brought a second state-court suit against UT-Austin in 2019, ROA.976, but SFFA took a nonsuit. ROA.999.

SFFA then brought this suit in federal court. ROA.25. UT-Austin moved to dismiss based on SFFA's lack of associational standing, and in the alternative, sought summary judgment based on res judicata and collateral estoppel. ROA.755. The district court rejected UT-Austin's argument that SFFA lacks standing, granted

summary judgment on res judicata, and did not reach the collateral estoppel issue. ROA.1543.

## SUMMARY OF THE ARGUMENT

Before addressing SFFA's appeal of the district court's summary judgment, this Court should address the threshold issue of SFFA's standing. Under this Court's precedent in *Friends of the Earth v. Chevron Chem. Co.*, 129 F.3d 826 (5th Cir. 1997), the law of the state of an organization's formation determines whether it is a traditional membership organization for purposes of associational standing. Here, SFFA has no members under the law of Virginia (the State where SFFA was formed), because SFFA's articles of incorporation state that SFFA "shall have no members." SFFA also does not satisfy the indicia-of-membership test applicable to organizations that lack formal members, because the persons that SFFA considers its members do not elect SFFA's leadership, have no meaningful input in SFFA's operations, and do not finance SFFA's activities. SFFA therefore does not have associational standing, and this cause must be dismissed for lack of subject matter jurisdiction.

In the alternative, the district court's summary judgment should be affirmed. In 2016, the U.S. Supreme Court upheld the use of race in UT-Austin's undergraduate admissions policy. Edward Blum, the architect of that litigation, founded SFFA together with Abigail Fisher (the named plaintiff in that lawsuit) and her father, and they control this litigation as officers and directors of SFFA. Fisher and Blum's role in

both lawsuits puts SFFA in privity with Fisher. SFFA's claims are also based on the same nucleus of operative facts as the earlier litigation, because they both attack the same admissions policy at UT-Austin, alleging that any consideration of race in UT's holistic review is discriminatory. Fisher and Blum had a full and fair opportunity to litigate their claims in the lawsuit that ended in 2016, and they may not do so again through the vehicle of SFFA.

Finally, the judgment can also be affirmed on the affirmative defense of collateral estoppel, a ground for summary judgment that the district court did not reach. The U.S. Supreme Court ruled that UT-Austin has a clear and compelling interest in student-body diversity and that UT-Austin is justified in including race as a factor in its holistic admissions policy. These issues were litigated, adjudicated, and necessary to the final judgment in the earlier case, and SFFA therefore may not re-litigate those issues here.

## ARGUMENT

### I.     SFFA Lacks Associational Standing to Pursue Its Claims.

The district court erred when it concluded SFFA established associational standing to bring its claims. While associational standing allows a traditional membership organization or its functional equivalent to bring suit as a representative of its members, SFFA is neither.

SFFA's articles of incorporation state: "The Corporation shall have no members." ROA.1041. This undisputed fact means that SFFA is a not a "traditional membership organization" for purposes of organizational standing. Accordingly, to establish standing, SFFA must show it is the functional equivalent of a membership organization under the indicia-of-membership test. The indicia-of-membership test, set forth by the Supreme Court in *Hunt*, allows an organization that lacks formal members to have standing if the organization represents its constituents and expresses their collective views. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 344 (1977). Under *Hunt*, the salient factors that demonstrate indicia of membership are participation in (1) voting, (2) service in the organization's leadership, and (3) financial support of the organization. The individuals who SFFA categorizes as members lack the relevant indicia of membership—SFFA is operated and controlled by founder Edward Blum to pursue his personal policy interests in eliminating any consideration of race in college admissions and funded almost exclusively by institutional donors, not members.

Because SFFA lacks standing, the district court's judgment should be vacated and remanded with instructions to dismiss for lack of jurisdiction. "A cross-appeal 'is not necessary to challenge the subject-matter jurisdiction of the district court, under the well-established rule that both district court and appellate courts are obliged to raise such questions on their own initiative.'" *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 351 n.1 (5th Cir. 2021) (quoting 15A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3904 (2d ed. 2021) ("WRIGHT & MILLER")). The district court's determination that SFFA has standing is subject to de novo review. *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018) ("The jurisdictional issue of standing is a legal question for which review is de novo." (citation omitted)).

### A. As an organization with "no members" under its articles of incorporation, SFFA must demonstrate "indicia of membership" to invoke associational standing.

The district court's failure to apply the indicia-of-membership test for purposes of associational standing cannot be reconciled with this Court's controlling decision in *Friends of the Earth v. Chevron Chem. Co.*, 129 F.3d 826 (5th Cir. 1997). *Friends of the Earth* held that when an organization has no members under the state laws governing its formation, the organization is not a traditional membership organization. *Id.* at 828-29. Instead, the indicia of membership test applies to determine if the organization can invoke associational standing. *Id.*; *see also Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) ("If the association seeking standing does

not have traditional members, as here, the association establishes its standing by proving that it has 'indicia of membership' . . . ."). That is the case here—under the law of the state of SFFA's incorporation (Virginia), SFFA is not a membership organization.

Virginia's Nonstock Corporation Act provides that a nonprofit corporation such as SFFA may have members or no members: "A corporation may have one or more classes of members or may have no members." Va. Code § 13.1-837. In order to have members, the organization's articles of incorporation must either detail the rights of the members or designate that the by-laws will so provide: "If the corporation has one or more classes of members, the designation of such class or classes and the qualifications and rights of the members of each class shall be set forth in the articles of incorporation or, if the articles of incorporation so provide, in the bylaws." *Id.* Here, SFFA's articles of incorporation neither provide any information on the qualifications or rights of members, nor state that SFFA's by-laws will do so. Instead, SFFA's articles of incorporation state that "The Corporation shall have no members." ROA.1041.

Notwithstanding the articles of incorporation, SFFA's bylaws do purport to create a class of members for all purposes except the Virginia Nonstock Corporation Act: SFFA "shall have one class of members, referred to as General Members, which shall not be 'members' within the meaning of the [Virginia Nonstock Corporation] Act . . . ." ROA.1087. Under Virginia law, the articles of incorporation control over

any conflicting provisions in the bylaws. Va. Code §§ 13.1-819(E); 13.1-823(B). Virginia courts hold that if the articles of incorporation do not authorize members, any bylaws purporting to create members are void. *Leon v. Martin*, 79 Va. Cir. 434, at *2-3 (Va. Cir. Ct. 2009). "Virginia law does not permit voting members without express authorization in the articles of incorporation." *Id.* at *3. Here, because SFFA's articles of incorporation state the organization shall have no members—without qualification—SFFA's bylaws attempting to create a class of legal members are invalid under Virginia law. And without members under the law of the state in which it was incorporated, SFFA cannot be a "traditional membership organization" for purposes of associational standing analysis.

In *Friends of the Earth*, this Court looked to the law of the state of incorporation to determine whether a group was a traditional membership organization. The plaintiff organization's "bylaws provide[d] that membership requirements shall be set by the board of directors," but the board had never taken action to set those requirements. 129 F.3d at 827 (emphasis added). The board of directors instead informally considered any financial donors to be members of the organization. *Id.* at 827. The defendant argued that the organization thus "had no legal members under the corporate laws of the District of Columbia," where the plaintiff had been formed. Relying on the Third Circuit's ruling in *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111 (3d Cir. 1997) ("*PIRG*"), this Court agreed, holding that "the 'indicia of membership' test [was] the correct one to apply to

determine whether a purported corporation, despite the failure to meet state law requirements, ha[d] 'members' whose interests it can represent in federal court." *Id.* at 829 (citing *PIRG*, 123 F.3d at 119). By requiring Friends of the Earth to satisfy the indicia of membership test, this Court necessarily confirmed that Friends of the Earth was not a traditional membership organization, despite the fact the organization considered itself to have members. *Id.* at 827, 829 ("The officers of FOE simply followed a practice of considering all those who gave a donation, as well as those who had a donation made in their name, to be members.").

The "failure to meet state law requirements" at issue in *PIRG* was even closer to the facts of this case. Like SFFA's articles of incorporation here, the charters of the plaintiffs in *PIRG* prohibited those organizations from having members. 123 F.3d at 119. Although not traditional membership organizations, the plaintiffs in *PIRG* could still meet the requirements for associational standing if they "prove[d] that their members possess the 'indicia of membership' in their organizations." *Id.* The facts necessitating the application of the indicia of membership test in both *Friends of the Earth* and *PIRG* are materially indistinguishable from those here: like the plaintiff organizations in those cases, SFFA lacks legal members under the state law governing the organization's formation.

While the district court correctly identified *Friends of the Earth* and *PIRG* as the relevant authorities, it distinguished both cases on the basis that SFFA's membership structure was not "sufficiently analogous." ROA.1532. The court's reasoning relied on

the false premise that there was no inconsistency between SFFA's articles of incorporation, which provide that SFFA "shall have no members" and SFFA's bylaws, which contemplate that SFFA will have members. But the court avoided the patent inconsistency between SFFA's articles and bylaws only by adding words to SFFA's articles of incorporation that simply are not there. Effectively, the district court interpreted the articles of incorporation to read that SFFA "shall have no members [for purposes of the Virginia Nonstock Corporation Act]." But no such limitation appears in SFFA's formation documents. Instead, the articles of incorporation broadly and unambiguously preclude the existence of any members: "The Corporation shall have no members." ROA.1041. For SFFA to have members, Virginia law requires that the articles of incorporation either identify the classes of members or specify that the bylaws will designate the classes of members. Va. Code § 13.1-819(A). Yet SFFA's articles do neither.

SFFA chose to organize itself as a non-membership, nonstock corporation under Virginia law, and enjoys the benefits associated with that corporate form, including limits on access to the corporation's membership list. *Id.* § 13.1-845(B), (D) (providing, for organizations with members, that members have the right to inspect and copy membership list). This choice has consequences and sets SFFA apart from other plaintiffs seeking associational standing. As an organization without members under the law governing its formation, SFFA must prove that the individuals it calls

its "members" possess the "indicia of membership" required of groups that do not qualify as traditional membership organizations.

Requiring SFFA to meet the indicia-of-membership test here also serves the underlying purpose of standing jurisprudence, which is to ensure the right to invoke judicial power is "placed in the hands of those who have a direct stake in the outcome" rather than "in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" *Diamond v. Charles*, 476 U.S. 54, 62 (1986).

### B.    The courts in *Harvard* and *UNC* never addressed the direct conflict between SFFA's articles of incorporation and bylaws.

In two other cases, SFFA has persuaded courts that it is in fact a "traditional membership organization." This Court is, of course, not bound to follow these decisions from other circuits, but this Court is obligated to follow its own precedent in *Friends of the Earth*. As explained above, that precedent requires this Court to look to the law of the state of incorporation to determine whether an organization is a "traditional membership organization," and here, the law of Virginia gives controlling weight to the articles of incorporation's provision that SFFA shall have no members.

Further, neither the district court nor First Circuit in *Harvard*, nor the district court in *UNC* directly addressed the significance of the "no members" provision of SFFA's articles of incorporation. Instead, each of those courts focused only on SFFA's bylaws. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*

(*"Harvard 1"*), 261 F. Supp. 3d 99, 111 (D. Mass. 2017), *aff'd* 980 F.3d 157, 184 (1st Cir. 2020) (*"Harvard 2"*); *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, No. 1:14CV954, 2018 WL 4688388, at *1 n.1, *4 (M.D.N.C. Sept. 29, 2018) (*"UNC"*). As explained above, however, the membership provisions in the bylaws are void under Virginia law due to their direct conflict with SFFA's articles of incorporation. *See* Section I(A), *supra*.

Indeed, given the specific arguments advanced by the defendants in *Harvard* and *UNC*, the courts in those cases were not asked to consider the impact of SFFA's articles of incorporation on the standing analysis. None of the defendants highlighted the inconsistency between SFFA's articles of incorporation and bylaws nor the significance of that inconsistency under Virginia law. Instead, Harvard's principal argument was that every organization asserting associational standing must pass the indicia-of-membership test, whether a traditional membership organization or not. *Harvard 1*, 261 F. Supp. 3d at 107. The district court and First Circuit rejected Harvard's broad reading of *Hunt* and declined to extend the indicia of membership test to all cases involving associational standing. *Id.* at 107-09; *Harvard 2*, 980 F.3d at 183-84. Both courts then relied on the recitations in SFFA's bylaws, without any consideration of the conflicting articles of incorporation, to conclude that SFFA was a traditional membership organization. *See Harvard 1*, 261 F. Supp. 3d at 105, 108 ("Here, in contrast, SFFA seeks to represent individuals who are clearly members as

defined by its Bylaws."); *Harvard 2*, 980 F.3d at 184. The court in *UNC* adopted the analysis in *Harvard I. UNC*, 2018 WL 4688388, at *1 n.1, *4.

Ultimately, none of the three opinions acknowledges the inconsistency between SFFA's bylaws and its articles of incorporation. The disconnect between the outcomes in *Harvard* and *UNC*, on the one hand, and *PIRG* and *Friends of the Earth*, on the other, reflects that the *Harvard* and *UNC* courts did not appreciate that they were facing the issue that the Third and Fifth Circuits had already resolved. In following the rulings in *Harvard* and *UNC*, the district court simply repeated their error. This Court should follow its own precedent in *Friends of the Earth*, rather than these other decisions involving SFFA.

## C.    SFFA does not satisfy the indicia-of-membership test.

Because SFFA is not a traditional membership organization, it bears the burden to establish standing under the indicia-of-membership factors. The factors assess whether the organization in fact represents its constituents and provides "the means by which [they] express their collective views and protect their collective interests." *Funeral Consumers All., Inc.*, 695 F.3d at 344 n.9 (citing *Hunt*, 432 U.S. at 344-45).

In *Hunt*, the Supreme Court identified the following facts about the plaintiff's constituents as the basis for finding the plaintiff had associational standing:

> They alone **elect** the members of the Commission; they alone may **serve** on the Commission; they alone **finance** its activities, including the costs of this lawsuit, through assessments levied upon them. In a very real sense, therefore, the Commission represents the State's

> growers and dealers and provides the means by which they express
> their collective views and protect their collective interests.

472 U.S. at 344-345 (emphases added). This Court has confirmed that these three

elements are the relevant factors:

> If the association seeking standing does not have traditional members, as
> here, the association establishes its standing by proving that it has
> "indicia of membership": its members **elect** leadership, **serve** as the
> organization's leadership, and **finance** the organization's activities,
> including the case's litigation costs.

*Funeral Consumers All., Inc.*, 695 F.3d at 344 n.9 (emphases added) (citing *Hunt*, 432

U.S. at 344-45); *see also Friends of the Earth*, 129 F.3d at 829 (discussing *Hunt*, 432 U.S.

at 344-45) (explaining that "[t]he Court in *Hunt* looked to who elected the governing

body of the organization and who financed its activities"); *Ass'n for Retarded Citizens of

Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d

241, 244 (5th Cir. 1994) (rejecting associational standing because the plaintiff's

"members" were "unable to participate in and guide the organization's efforts").

Applying these three factors here, the summary judgment evidence

demonstrates that SFFA is not the "functional equivalent" of a membership

organization and thus lacks associational standing.

### 1.    SFFA's leadership is not member-elected.

The first indicia-of-membership requirement tests the degree to which leaders

of the organization answer to membership through regular elections. *See, e.g., Hunt*,

432 U.S. at 344 (apple growers and dealers "alone elect the members of the

Commission"). SFFA's non-statutory "General Members" do not elect SFFA's leadership in any meaningful sense.

SFFA's amended bylaws allow its "members" to vote only for one of the five directors on SFFA's board. ROA.931:16-22. The other four directors—Blum, Abigail Fisher, her father, and an individual designated by the board—are not selected or voted on by SFFA's membership. ROA.847:18-848:9, 1087-1088, 1088 (§§ 3.02, 4.04). In other words, the "members" have no power to elect, or vote upon, four out of five of SFFA's directors. Those four director seats are effectively self-appointed and self-perpetuating. *See Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. CIV.A. 83-513, 1984 WL 6618, at *40-41 (D.N.J. Sept. 25, 1984) ("The organization essentially is run by people who are self-appointed, a fact which weighs heavily against its being considered a membership organization."). Blum has described his and the Fishers' positions within SFFA as permanent. ROA.829:14-830:11, 851:22-852:4, 854:29-855:3.

The domination of SFFA's leadership by individuals selected without input from SFFA's membership is further illustrated by SFFA's bylaws. SFFA's amended bylaws provide that a quorum is a majority of the board and that all votes carry by a majority of directors present. ROA.1089 (§ 4.08). This means that the single "member"-elected director can do nothing on his or her own. ROA.848:6-848:9. The self-perpetuating directors, who are never subject to any vote by the "members," can always out-vote the single "member"-elected director; and they have the power to appoint themselves officers even over the objection of the single "member"-elected

director. ROA.847:18-848:15 *see Package Shop, Inc.,* 1984 WL 6618 at *40-41 (rejecting associational standing where it did not "appear that the membership can control the actions of the officers and trustees, most of whom they did not elect").

The opportunity to elect one person, with a non-controlling vote, is a far cry from the power to directly elect the governing body of the organization. Indeed, the two "standing members"—the only two persons within the alleged 20,000 "members" of SFFA who actually applied to and were rejected by UT-Austin in the two relevant years—did not vote and cannot even recall whether they were invited to vote on the "member"-elected director. ROA.1147:3-1148:1, 161:20-161:25, 1162:17-1162:19. Without meaningful participation by membership in selecting the balance of SFFA's directors, the organization risks becoming "no more than a vehicle for the vindication of the value interests of concerned bystanders." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973).

## 2.    SFFA lacks member service in the organization.

SFFA's membership also plays virtually no role in service to the organization and guidance of SFFA's activities. Members have no opportunity to serve on committees, nor are they polled for their opinions on policy matters or actions to be taken, nor have they ever petitioned SFFA's leadership concerning any policy or action. ROA.937:20-938:6; *cf. AARP v. United States Equal Emp't Opportunity Comm'n*, 226 F. Supp. 3d 7, 17 (D.D.C. 2016) ("AARP's members play a role in guiding AARP activities by participating in various annual opinion polls and surveys, which are

designed to solicit member input on AARP policy positions, and through participation in AARP's various policy committees"). Instead, Blum controls SFFA's day-to-day affairs. ROA.833:5-833:20 ("SFFA is primarily managed by myself in my residence.").

While Blum may solicit views from "members" from time to time, one cannot characterize them as having any meaningful opportunity to participate in SFFA's operations. ROA.937:20-938:6. There is no opportunity for collective participation by members; instead, individuals wishing to share input must reach out directly to Blum ROA.937:20-938:6 ("The only way that an individual can make suggestions about the direction or activities of SFFA is to contact or go to me directly."). No group of individuals has ever petitioned SFFA to encourage the organization to move in a specific direction. ROA.937:10-12. SFFA's members have no way of even identifying one another, so any coordinated effort by members to collectively affect the direction of the organization is, as a practical matter, impossible. ROA.932:8-933:4, 937:20-938:5. Thus, there is no sense in which SFFA furnishes the "means by which [its purported members] express their collective views and protect their collective interests." *Friends of the Earth*, 129 F.3d at 828 (quoting *Hunt*, 432 U.S. at 344-45).

### 3.  Less than four percent of SFFA's funding comes from members.

Finally, undisputed evidence shows SFFA's "members" do not finance the organization's activities, including the costs of this litigation. *See Funeral Consumers All.*, 695 F.3d at 344 n.9 ("If the association seeking standing does not have traditional

members, as here, the association establishes its standing by proving that … its members… finance the organization's activities, including the case's litigation costs.").

Membership dues comprise only a small fraction of SFFA's revenues. ROA.918:7-10 (agreeing that "the vast majority of members of SFFA have not paid [membership] dues"). For example, in 2019, membership dues made up just $2,600 out of $1,539,694 (*i.e.*, 0.17%) of SFFA's annual revenue. ROA.1096, 1104. Similarly, as of the last date SFFA disclosed donor information, over 96% of SFFA's funding came from institutional donors, rather than its members. ROA.1133 (showing over 96% of SFFA's funding through November 1, 2017 came from nine "institutional donors," while just over three percent came from financial contributions from individual members). Of the persons SFFA considers members, less than five percent have ever contributed financially to SFFA. ROA.918:7-10 (Blum acknowledging that "the vast majority of members of SFFA have not paid [membership] dues"); ROA.942:22-943:7. The amounts contributed by members pale in comparison to SFFA's expenditures on litigation, which totaled over one million dollars in 2019. ROA.1097.

These facts stand in stark contrast to other cases within the Fifth Circuit that have approved standing for associational plaintiffs under the indicia-of-membership analysis. *Compare Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 676-77 (E.D. La. 2010) (noting that the organizational plaintiff's operations were "entirely dependent on members' contributions, volunteer efforts and continued

good-will") *with Tex. Indigenous Council v. Simpkins*, No. SA-11-CV-315-XR, 2014 WL 252024, at \*3-4 (W.D. Tex. Jan. 22, 2014) (rejecting associational standing where the "members" did "not appear to have a voice in steering the direction of the group" and did "not appear to finance group activities"). If contributions comprising less than 4% of an organization's operating budget counts as "financing" the organization's activities, the factor ceases to play any substantive role in the analysis.

### D.    This case must be dismissed for lack of subject matter jurisdiction.

In sum, under the law of the state where it was incorporated, SFFA has no members as a matter of law. SFFA is therefore not a traditional membership organization. SFFA also cannot meet the three-part indicia-of-membership test because its members do not elect SFFA's leadership, have no meaningful input in the operations of SFFA, and do not finance SFFA's activities, including this litigation. As a matter of law, SFFA does not have associational standing, and this Court must therefore dismiss this cause for lack of subject matter jurisdiction.

## II.    Res Judicata Bars SFFA's Claims.

"Public policy dictates that there be an end of litigation[,] that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Assn.*, 283 U.S. 522, 525 (1931). This doctrine "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions . . . . To preclude parties from contesting matters that they

have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

On June 23, 2016, the United States Supreme Court issued the second of its two opinions in *Fisher v. University of Texas at Austin*, concluding more than eight years of litigation over the permissibility of UT-Austin's consideration of race among many other factors in the holistic review process that UT-Austin uses in its undergraduate admissions program. Edward Blum—the self-proclaimed "architect" of the lawsuit— had hand-picked Abigail Fisher to serve as the lawsuit's plaintiff, connected her with lawyers of his choosing, and coordinated the lawsuit's funding.

On the very day that the Court delivered the *Fisher* opinion, Blum began planning a new lawsuit against UT-Austin. ROA.868:12-869:9, 900:9-901:20. Rather than accept the ruling that the Court had just issued as final, Blum chose to pursue renewed litigation in hopes for a different result, this time through SFFA, an organization Blum had founded and of which he and Fisher were officers and directors. ROA.812:3-812:11, 819:4-819:20, 868:12-869:9, 900:9-901:20. Roughly one year later, SFFA filed in Texas state court the first of what are now three successive lawsuits against UT-Austin, ROA.952, with the ultimate goal of overturning the loss that Fisher and Blum suffered when the Supreme Court approved UT-Austin's limited consideration of race in its holistic admissions process. ROA.812:3-869:18.

The district court properly held that the doctrine of res judicata bars this latest attempt by Fisher and Blum to re-litigate the issues decided against them in *Fisher*.

Res judicata requires proof of four elements: "(1) The parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999) (quoting *Swate v. Hartwell*, 99 F.3d 1282, 1286 (5th Cir. 1996)).

The second and third elements are not in dispute here: the judgment in *Fisher* was rendered by a "court of competent jurisdiction," and the case was decided on the merits with a take-nothing judgment in favor of UT-Austin and the official-capacity defendants. ROA.1166; *Fisher v. Univ. of Texas at Austin*, 136 S. Ct. 2198 (2016) (*Fisher II*). SFFA disputes the other two elements: whether SFFA is in privity with Fisher and whether the two cases involve the same claim or cause of action.

## A.     SFFA and Abigail Fisher are in privity.

Although SFFA was not a party to the prior *Fisher* suit, SFFA and Fisher are in privity, because she and Blum collectively controlled both lawsuits. Fisher and Blum should not be allowed to pursue a claim against UT-Austin in her name all the way to

final judgment in the U.S. Supreme Court, then re-file the same claim against UT-Austin through an organization they control.[3]

"'Privity' is recognized as a broad concept, which requires [courts] to look to the surrounding circumstances to determine whether claim preclusion is justified." *Russell v. SunAmerica Sec. Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). Although "[o]lder definitions of privity were very narrow[,] … [a]s the preclusive effects of judgments have been expanded to include nonparties in more and more situations, … it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper." *Id.* (quoting 18A WRIGHT & MILLER § 4449). "The general rule is '. . . that for purposes of the conventional statement that a judgment binds the "parties" to the action, the word "parties" does not refer to formal or paper parties, but to parties in interest, that is, that persons whose interests are properly placed before the court by someone with standing to represent them are bound by the matters determined in the proceeding.'" *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984) (quoting 1B J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.411[1] at 390-91 (2d ed. 1983)).

SFFA argues that in *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008), the Supreme Court established six narrowly construed categories of nonparty preclusion and ruled

---

[3]     There is no dispute that the defendants in *Fisher* and this case are in privity. Both suits name UT-Austin and the same official-capacity defendants: UT-Austin's President and Director of Undergraduate Admissions, and the Chancellor and Regents of The University of Texas System. ROA.1005-1007, 27-28.

out all others. The Court, however, was careful to state that its six categories were not definitive, noting that: "[t]he established grounds for nonparty preclusion could be organized differently," and that the six-factor list "is meant only to provide a framework for our consideration of virtual representation, not to establish a definitive taxonomy." *Id.* at 893. Furthermore, while the Court expressly disapproved "the theory of virtual representation on which the decision" of the trial court in that particular case rested, the Court also noted that "dropping the 'virtual representation' label would lead to clearer analysis with little, if any, change in outcomes." *Id.* at 904. Properly construed, therefore, *Taylor* did not change the federal common law's longstanding nonparty preclusion rules beyond rejecting the "virtual representation" doctrine that was before the Court in that case.

Control by a nonparty may be a basis for a finding of privity with a party to an earlier judgment: "a nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered . . . "[b]ecause such a person has . . . already 'had his day in court' even though he was not a formal party to the litigation." *Id.* at 895; *see also Cichocki v. Mass. Bay Cmty. Coll.*, 199 F. Supp. 3d 431, 441 (D. Mass. 2016) ("[P]rivity exists (and, therefore, nonparty preclusion potentially obtains) if a nonparty either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his de facto representative.") (quoting *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758 (1st Cir. 1994)). This Court likewise recognizes that privity exists "where the non-party

controlled the prior litigation." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).

The application of res judicata through non-party control applies to "the activities of the various organized groups that have come to shape so much contemporary litigation." 18A WRIGHT & MILLER § 4451. "A civil rights organization, for example, might wish to mount successive attacks on the same welfare practices, acting through different named plaintiffs in each action." *Id.* "Those who are anxious to exhaust every possible challenge in such areas may be tempted to defeat preclusion by asserting that the organization lacked any sufficient interest in the result of the first action." *Id.* Instead, however, "the organization is precluded by virtue of sufficient control over the first action." *Id.*

The undisputed facts surrounding the relationship between Fisher, Blum, and SFFA warrant treating Fisher and SFFA as being in privity. Fisher and Blum co-founded SFFA with Fisher's father, with all three serving as an officer and director of SFFA. Fisher and Blum together have shared in the opportunity to direct both lawsuits. Under federal common law, that opportunity is enough to conclude privity exists. *See id.* ("[I]t should be enough that the nonparty has the actual measure of control or opportunity to control that might reasonably be expected between two formal coparties.") (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1319 (10th Cir. 1997)).

Under these principles, Fisher should not be allowed to lose a federal lawsuit in her own name challenging UT-Austin's use of race in admissions, then re-file virtually

identical legal challenges through a corporation of which she is an officer and director. Blum, while not a party to the earlier litigation, orchestrated the *Fisher* lawsuit and likewise directs this one. "Control" does not imply that the nonparty is the only person involved. Rather, courts hold control is present where a nonparty exercises the degree of participation and control one might "reasonably expect[ ] from a co-party." *Am. Postal Workers Union Columbus Area Local v. U.S. Postal Service*, 736 F.2d 317, 319 (6th Cir. 1984); *cf. Gonzalez*, 27 F.3d at 758 (privity exists where "availability of a significant degree of effective control in the prosecution or defense of the case—what one might term, in the vernacular, the power—whether exercised or not—to call the shots").

Blum's participation and control over both *Fisher* and this case are sufficient to establish privity between the two plaintiffs for purposes of claim preclusion. *See Ferris v. Cuevas*, 118 F.3d 122, 128 (2d Cir. 1997) (privity applies to prevent "one controlling person or entity from bringing multiple suits in the names of different plaintiffs, and controlling the litigation from the shadows"). In both *Fisher* and this case, Blum has been personally involved in and responsible for: (1) identifying the basic issues to be litigated; (2) selecting the plaintiff (and in this case, the so-called "standing member") to be the face of the case; (3) selecting and communicating with the attorneys who represent the plaintiff; (4) acting as a "representative" for the plaintiff and, based on that role, asserting attorney-client privilege when asked about the *Fisher* lawsuit; and (5) coordinating fundraising efforts to support the litigation. ROA.895:9-898:15,

803:22-804:15, 857:22-859:13. In both the *Fisher* litigation and in this lawsuit (as with all of SFFA's lawsuits), Blum was the person who made each of the decisions that a plaintiff ordinarily faces: what issues to sue about; what persons to sue; what relief to seek; what lawyers to use; and how to pay the legal fees and expenses for the lawsuit. ROA.895:9-898:15, 803:22-804:15, 857:22-859:13.

While Blum is not a lawyer, ROA.818:2-818:3, he was Fisher's "representative for purpose of facilitating and receiving legal communications for her benefit." ROA.879:8-879:15. He served as "her representative in making and helping with decisions and communicating with counsel." ROA.878:10-878:13. When referring to significant events in *Fisher*, Blum describes himself as having a personal role: "After the lawsuit was filed, … *we* amended *our* complaint to add another plaintiff." ROA.861:11-861:14 (emphasis added)). Blum personally had discussions with the trial and appellate lawyers in *Fisher* at the district court stage, at the court of appeals stage, and at the United States Supreme Court stage. ROA.876:7-876:20. Because of his special role in the lawsuit, Blum considered his communications to be privileged, ROA.880:16-880:25, and SFFA has asserted "attorney-client privilege" to prevent any questioning about Blum's communications with Fisher or with her counsel in the *Fisher* litigation. ROA.876:21-877:8. Having unsuccessfully challenged the constitutionality of UT-Austin's consideration of race in admissions through his chosen designee in the prior suit, Blum cannot now re-litigate that legal issue through a new plaintiff whom he controls. *See Ferris*, 118 F.3d at 128 (privity prevents "one

controlling person or entity from bringing multiple suits in the names of different plaintiffs, and controlling the litigation from the shadows").

SFFA contends that preclusion cannot apply because Blum himself was never the named party and SFFA was formed only in the late stages of the *Fisher* litigation. But SFFA's proposed approach ignores the core purpose of the rules concerning privity by reason of control or proxy. Under SFFA's approach, so long as Blum remains "behind the scenes" and never makes his way into the style of the case, he may assert the same claims against the same defendants ad infinitum. The only limit on his right to do so would be his ability to find new students or form new entities to serve as the nominal plaintiff for each case. Courts routinely look past such empty formalisms when, as here, the facts clearly favor a finding of privity. *See Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 689 (10th Cir. 1992) (finding privity where an entity plaintiff brought a second case to seek a remedy as an alternative to damages its individual members sought in an earlier filed case). Indeed, common sense dictates that if party status can be imputed to a nonparty based on the nonparty's participation in a second suit, the same imputation principles should be available in evaluating the first suit. *See Gonzalez*, 27 F.3d at 758–59 ("If a nonparty either participated vicariously in the original litigation by exercising control over a named party or had the opportunity to exert such control, then the nonparty effectively enjoyed his day in court, and it is appropriate to impute to him the legal attributes of party status for purposes of claim preclusion."). Here, for both cases,

Blum hand-picked the individuals who would be the face of each suit, he chose the legal challenges to be lodged, and he chose the lawyers to be retained and the litigation strategies to employ. Blum's participation and control over these cases are amply sufficient to impute party status to him in each.[4]

Absent a finding of privity, there will be no limit on Fisher and Blum's ability to continue suing UT-Austin over the same admissions policy. If SFFA loses, then the next lawsuit against UT-Austin might be in the name of "SFFB," a new entity controlled by Fisher and Blum, and then "SFFC." Refusing to recognize privity in this case could set a precedent allowing individuals to bring repeated challenges to governmental policies they disfavor under the cover of organizations they set up and control for that specific purpose. Such plaintiffs would always claim—as SFFA does here—that because they were newly formed after the prior litigation was filed, the actual exercise of common control by the same individuals throughout should be disregarded. This Court should reject such empty formalisms. The myriad, overlapping connections between SFFA, Blum, and the Fishers in pursuing these lawsuits point to the necessary conclusion that, in this case, "preclusion is proper." *Russell*, 962 F.2d at 1173. Fisher and Blum had their "day in court" when the Supreme

---

[4]     SFFA's citation to *Johnson v. City of Houston*, 444 F. App'x 26, 31 (5th Cir. 2011) concerning the rule applicable to plaintiffs who participate in successive lawsuits in individual and representative capacities does not indicate a contrary result. Blum did not act in a different capacity in the two suits.

Court decided *Fisher* on the merits. *Taylor*, 553 U.S. at 895. They may not relitigate those same claims through another vehicle, such as SFFA here.

**B.    This case and *Fisher* involve the same claim or cause of action.**

This Court applies a "transactional test" to determine "whether two suits involve the same claim or cause of action." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). Under that test, the preclusive effect of a prior judgment extends to all rights the original plaintiff had "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Id.* at 395–96. While factors such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage" inform this inquiry, the "critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*." *Id.* at 396 (emphasis in original) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) and *In re Southmark Corp.*, 163 F.3d at 934).

Here, *Fisher* and this lawsuit are based on the same nucleus of operative facts because they both attack the same admissions policy at UT-Austin, alleging that any consideration of race in UT's holistic review is discriminatory. They thus should be treated as the same claim for purposes of applying res judicata, notwithstanding the fact that the "standing members" of SFFA in this lawsuit applied for admission to UT-Austin in a different year than Abigail Fisher.

When determining whether two cases involve the "same nucleus of operative facts," the facts that matter are those that are material to the dispute: "In order for new facts to constitute a new cause of action and thus allow a claim to be relitigated, those facts must be both 'significant' and create 'new legal conditions.'" *Wilson v. Lynaugh*, 878 F.2d 846, 851 (5th Cir. 1989) (quoting *Hernandez v. City of Lafayette*, 699 F.2d 734, 737 (5th Cir. 1983)). A comparison of the pleadings in *Fisher* and this case shows that both lawsuits arise from the same nucleus of operative facts. The pleadings in each case recount the same history of UT's admissions policy:

- before 1996, UT considered race in making admissions decisions;

- UT stopped doing so in 1996, following the Fifth Circuit's decision in *Hopwood v. Texas*, 78 F.3d 932 (5th Cir. 1996);

- in 1997, UT began using "holistic review" but without permitting the race of an applicant to be considered in the process;

- also in 1997, the Texas Legislature passed what has become known as the Top Ten Percent Law;

- in 2003, the Supreme Court decided *Grutter v. Bollinger*, 539 U.S. 306 (2003), which effectively abrogated the Fifth Circuit's earlier decision in *Hopwood*;

- beginning in 2004, UT added race to the various diversity factors that were already being considered as part of the holistic review process for undergraduate admissions; and

- in the plaintiff's view, the decision to add race to holistic review was both discriminatory and unnecessary.

ROA.1007-1011, 1015-1017, 1029-1032, 176-180, 207-221.

The fact that SFFA's pleadings focus on UT-Austin's Fall 2018 and 2019 class—whereas *Fisher* involved an earlier admissions class—does not prevent the application of res judicata based on Fisher's earlier lawsuit. Judgments bar litigation over later-occurring events, when the substance of the alleged discrimination is the same and "all of [the] events were directly related to each other in terms of motivation and common purpose . . . ." *Havercombe v. Dep't of Educ. of Commonwealth of P.R.*, 250 F.3d 1, 6 (1st Cir. 2001). That is the case here. SFFA alleges the same purported discrimination that Abigail Fisher alleged regarding UT-Austin's holistic review process for undergraduate admissions:

> For recent admissions cycles, UT-Austin has continued to ask students to classify themselves from among a select group of broad racial categories on the application, *see Fisher I*, 570 U.S. at 306, and it still discriminates on the basis of race in admitting the portion of the freshman class enrolled outside the operation of the Top Ten Percent Plan.

ROA.188. SFFA's pleadings acknowledge the continuity between today's admissions process and the one challenged in the prior litigation. *See* ROA.188 ("Post-*Fisher II*: UT-Austin Continues to Rely on Race-Based Admissions."); ROA.188 ("Since *Fisher II* was decided, UT-Austin has repeatedly acknowledged that it continues to use race in the admissions process.")). SFFA cites a March 2017 UT-Austin study, which "outlined its plan to continue using race in its admissions decisions" as a result of 'the university's successful defense of its admissions policy in the *Fisher* case.'" ROA.188. Both pleadings allege that automatic admission of the top-ten percent of Texas high school students satisfies the diversity goals of UT-Austin without the need for

consideration of race in admissions. *Compare* ROA.1022 ("UT Austin failed to consider and take advantage of the obvious and proven alternative of continued utilization of the Top 10-AI/PAI Plan, which had demonstrated success in promoting diversity, a fact UT Austin has acknowledged and even lauded.") *with* ROA.193 ("UT-Austin has a ready-made formula for achieving racial diversity—maintain or increase the use of the Top Ten Percent Plan and admit the rest through race-neutral means.").

The only difference in the admissions process alleged by SFFA is that, before 2017, UT-Austin described "racial/ethnic status" as a "considered" factor, but starting in 2017, described it as a "very important" factor. ROA.190 ¶¶ 97-98. As the district court properly concluded, "[t]his difference in semantics in how UT's policy is described does not indicate that the use of race in admissions has changed in a way that would merit relitigation of its constitutionality." ROA.1542; *see Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 449 (5th Cir. 2016) ("'[T]he critical question is not whether any facts or law have changed between *SafeClear II* and this suit, but whether there have been any significant changes—whether the factual and legal basis undergirding HPTA's claim of preemption has changed.'"); *Shults v. Texas*, 762 F.2d 449, 452 (5th Cir. 1985) ("'[T]he primary right asserted . . . and the primary wrong complained of . . . are the same in both actions. That the pertinent provisions of the 1983 amendments at issue here are not identical in other respects to the pertinent provisions of the 1981 amendments at issue in [the prior case] is irrelevant.'"); *Adams v. City of Indianapolis*, 742 F.3d 720, 723-24 (7th Cir. 2014)

("[A]lthough the challenged promotion decisions occurred at different times, the second suit raises the same core of factual allegations as the first.").

SFFA points to various allegations regarding admissions data in the years since Fisher filed her suit as a basis for distinguishing the cause of action here. But the district court was correct to conclude that the substantive allegations regarding the admissions data are comparable in both cases, and in any event, these differences do not establish new legal or factual conditions because the issues are not ones "that can or should be reduced to pure numbers." ROA.1542-43 (quoting *Fisher II*, 136 S. Ct. at 2210); *Hernandez*, 699 F.2d at 737 (to avoid application of res judicata, changed circumstances must be "significant" and "must create 'new legal conditions'" (quoting *Jackson v. De Soto Parish Sch. Bd.*, 585 F.2d 726, 729 (5th Cir. 1978)).

SFFA also draws a distinction between the specific relief at issue in *Fisher* (damages) with the relief requested in this case (declaratory and injunctive relief). As SFFA acknowledges, however, Fisher likewise sought declaratory and injunctive relief at the outset of the case, even if she ultimately lost standing to pursue it. But regardless, the specific form of relief requested in the two cases is not relevant: "If the factual scenario of the two actions parallel, the same cause of action is involved in both. The substantive theories advanced, *forms of relief requested*, types of rights asserted, and variations in evidence needed *do not inform this inquiry*." *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994) (emphasis added).

Finally, SFFA is wrong that the Supreme Court's statements in *Fisher* concerning the possible need for further judicial review of UT-Austin's admissions policy should make any difference to the analysis here. Nothing in the Court's opinion indicates that the normal rules of claim preclusion would not apply to the judgment in this case—*i.e.*, that Fisher and Blum were free to repeatedly challenge the same admissions policy on the hope that they might obtain a different result. "If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). Because they had a full and fair opportunity to litigate their claims in *Fisher*, they may not do so again in this case through SFFA.

## III.    SFFA's Claims Are Barred By Collateral Estoppel.

In the alternative, the Court should affirm the judgment because SFFA's claims are barred by collateral estoppel. Collateral estoppel applies to the central issues of (1) whether UT-Austin has a clear and compelling interest in student-body diversity and (2) whether UT-Austin is justified in including race as a factor in its holistic admissions policy. These issues were decided in UT-Austin's favor in the *Fisher* litigation, and this Court should therefore hold that collateral estoppel bars the re-litigation of those dispositive issues in this case.

UT-Austin raised this ground in its motion for summary judgment, but the district court did not rule on it. ROA.1543. This Court may address the merits of the issue on this appeal. *Certain Underwriters at Lloyd's, London v. Axon Pressure Products Inc.*,

951 F.3d 248, 258 (5th Cir. 2020) ("We may affirm on any ground that was presented to the district court even if it did not ultimately form the basis of the district court's decision."); *see also United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924) ("[I]t is . . . settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.").

Collateral estoppel, or issue preclusion, bars a plaintiff from re-litigating an issue when: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005).

Like res judicata, collateral estoppel bars re-litigation by parties in privity with those who directly participated in the prior litigation. *Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 F. App'x 399, 401 n.1 (5th Cir. 2008). And as explained above in connection with res judicata, SFFA is in privity with Fisher.

SFFA seeks here to re-litigate whether UT-Austin's interest in "student body diversity" is a sufficiently clear and compelling interest to satisfy strict scrutiny. ROA.217. That question was squarely raised in *Fisher*, and it was resolved in favor of UT-Austin. *See Fisher II*, 136 S. Ct. at 2210 (rejecting Fisher's argument "that the University has not articulated its compelling interest with sufficient clarity" and identifying the interest as "the educational benefits that flow from student body

diversity"); *see also Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 309 (2013) (*Fisher I*) ("[O]btaining the educational benefits of 'student body diversity is a compelling state interest that can justify the use of race in university admissions.'"). UT-Austin could not have prevailed if it had failed to demonstrate with clarity its compelling interest. *Fisher II*, 136 S. Ct. at 2208 ("Strict scrutiny requires the university to demonstrate with clarity that its 'purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is necessary . . . to the accomplishment of its purpose.'"). As such, the determination in UT-Austin's favor on that issue was necessary to the decision. Collateral estoppel "bars relitigation of any factual or legal issue that was actually decided in previous litigation 'between the parties, whether on the same or a different claim.'" *Keystone Shipping Co. v. New England Power Co.*, 109 F.3d 46, 51 (1st Cir. 1997) (citation omitted).

SFFA also asserts that UT-Austin can achieve diversity through the Top Ten Percent Plan and race-neutral holistic review. The Supreme Court, however, found significant evidence justifying UT-Austin's inclusion of race as a factor in its holistic admissions program, concluding that UT-Austin made a reasonable determination to include race as a factor in holistic admissions review. *Fisher II*, 136 S. Ct. at 2211-12.

Each of these determinations were actually litigated in *Fisher*, they were decided against Fisher, and taken individually and in the aggregate, they were necessary to the judgment rendered in favor of UT-Austin. Courts will not permit a plaintiff to advance "new theories in an attempt to resurrect the already-decided issue," and they

properly disregard "changed factual circumstances that are immaterial to the underlying legal issue." *See Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 92 (1st Cir. 2007). Each element is present here. This Court should therefore hold collateral estoppel bars the re-litigation of the dispositive issues in this case.

## CONCLUSION AND RELIEF REQUESTED

This Court should dismiss SFFA's claims for want of subject matter jurisdiction. In the alternative, this Court should affirm the district court's judgment.

Respectfully submitted,

GRAVES, DOUGHERTY,
HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: (512) 480-5600
Facsimile: (512) 480-5804

By: */s/ Matthew C. Powers*
      Matthew C. Powers
      Texas State Bar No. 2406650
      William Christian
      Texas State Bar No. 00793505
      Marianne W. Nitsch
      Texas State Bar No. 24098182

**COUNSEL FOR UT-AUSTIN, ET AL.
DEFENDANTS-APPELLEES**

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 28(c)(2)(i) because it contains 9,307 words, excluding the parts exempted by Rule 32(f) and Fifth Circuit Rule 32.2; and (2) the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in proportionally spaced typeface (14-point Garamond). Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

                                        */s/ Matthew C. Powers*

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on December 3, 2021, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                        */s/ Matthew C. Powers*