Case No. 21-50715

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Students for Fair Admissions, Incorporated,
    *Plaintiff-Appellant*

v.

University of Texas at Austin; James B. Milliken, Chancellor of the University of Texas System in his Official Capacity; Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity; Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity; Jay Hartzell, Interim President of the University of Texas at Austin in his Official Capacity; Board of Regents of the Texas State University System; David J. Beck, Member of the Board of Regents in His Official Capacity; Christina Melton Crain, Member of the Baord of Regents in Her Official Capacity; Kevin P. Eltife, Member of the Board of Regents in His Official Capacity; R. Steven Hicks, Member of the Board of Regents in His Official Capacity; Jodie Lee Jiles, Member of the Board of Regents in Her Official Capacity; Janiece Longoria, Member of the Board of Regents in Her Official Capacity; Nolan Perez, Member of the Board of Regents in His Official Capacity; Kelcy L. Warren, Member of the Board of Regents in His Official Capacity; James C. ("Rad") Weaver, Member of the Board of Regents in His Official Capacity; Daniel Jaffe, Interim Executive Vice President and Provost; Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student Success; Miguel Wasielewski, Executive Director for Office of Admissions,
    *Defendants-Appellees*

The Black Student Alliance; The Texas Orange Jackets; Texas NAACP; Adaylin Alvarez; Morgan Bennett; Liz Kufour; Brianna Mallorie McBride; Desiree Ortega-Santiago; Nima Rahman; Alexandra Trujillo; Rosaleen Xiong,
    *Intervenor Defendants-Appellees*

On Appeal from the United States District Court Western District of Texas,
Austin Division, Civil Action No. 1:20-cv-00763

# BRIEF OF INTERVENOR DEFENDANTS-APPELLEES

[Counsel listed on following page]

DAVID HINOJOSA
GENEVIEVE BONADIES TORRES
LAWYERS' COMMITTEE FOR CIVIL
  RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
(202) 662-8600

ALAN R. KABAT
BERNABEI & KABAT, PLLC
1400 16th Street N.W., Suite 500
Washington, D.C., 20036
 (202) 745-1942

BRIAN C. PIDCOCK
HUNTON ANDREWS KURTH LLP
600 Travis Street
Houston, TX 77002
(713) 220-4200

NEIL K. GILMAN
CARTER C. SIMPSON
DANIEL R. STEFANY
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500

*Attorneys for Intervenor Defendants-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

No. 21-50715

*Students for Fair Admissions, Inc. v. University of Texas at Austin, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

## *Plaintiff-Appellant*
Students for Fair Admissions, Inc.

## *Attorneys for Plaintiff-Appellant*
CONSOVOY MCCARTHY PLLC
William S. Consovoy
Thomas R. McCarthy
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis

## *Defendants-Appellees*
University of Texas at Austin
James B. Milliken, Chancellor of the University of Texas System in his Official
    Capacity
Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of
    Texas System in his Official Capacity
Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of
    Texas System in his Official Capacity
Jay Hartzell, Interim President of the University of Texas at Austin in his Official
    Capacity
Board of Regents of the Texas State University System
David J. Beck, Member of the Board of Regents in his Official Capacity
Christina Melton Crain, Member of the Board of Regents in her Official Capacity
Kevin P. Eltife, Member of the Board of Regents in his Official Capacity
R. Steven Hicks, Member of the Board of Regents in his Official Capacity
Jodie Lee Jiles, Member of the Board of Regents in his Official Capacity

Janiece Longoria, Member of the Board of Regents in her Official Capacity
Nolan Perez, Member of the Board of Regents in his Official Capacity
Kelcy L. Warren, Member of the Board of Regents in his Official Capacity
James C. "Rad" Weaver, Member of the Board of Regents in his Official Capacity
Daniel Jaffe, Interim Executive Vice President and Provost
Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student
   Success
Miguel Wasielewski, Executive Director for Office of Admissions

### *Attorneys for Defendants-Appellees*
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
John J. McKetta, III
Marianne W. Nitsch
Matthew C. Powers
William Christian

### *Intervenor Defendants-Appellees*
The Black Student Alliance
The Texas Orange Jackets
Texas NAACP
Adaylin Alvarez
Morgan Bennett
Liz Kufour
Brianna Mallorie McBride
Desiree Ortega-Santiago
Nima Rahman
Alexandra Trujillo
Rosaleen Xiong

### *Attorneys for Intervenor Defendants-Appellees*
HUNTON ANDREWS KURTH, L.L.P.
Brian C. Pidcock
Neil K. Gilman
Carter C. Simpson
Daniel R. Stefany
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
David G. Hinojosa
Genevieve Bonadies Torres
BERNABEI & KABAT, PLLC
Alan R. Kabat

Respectfully submitted,

/s/ David Hinojosa
David Hinojosa

*Counsel for Intervenor Defendants-Appellees*

## **STATEMENT REGARDING ORAL ARGUMENT**

Intervenor Defendants-Appellees believe the district court's summary judgment order can and should be affirmed exclusively on the briefs, without oral argument. That said, Intervenor Defendants-Appellees would be pleased to present oral argument if it would aid the Court in the disposition of the appeal.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ......................................... iv

TABLE OF AUTHORITIES .................................................................. vi

ISSUES PRESENTED ........................................................................ viii

SUMMARY OF ARGUMENT ................................................................ 1

ARGUMENT ................................................................................... 3

    I.     PLAINTIFF SFFA'S CLAIMS ARE BARRED BY THE
          DOCTRINES OF RES JUDICATA AND COLLATERAL
          ESTOPPEL. ...................................................................... 3

    II.    THE COURT SHOULD AFFIRM DISMISSAL BECAUSE
          SFFA'S TWO MEMBERS LACK STANDING. ............................. 8

          A.    Unlike other race-conscious admissions plans, UT-Austin's
               holistic admissions plan does not automatically place white
               applicants at a disadvantage; consequently, traditional
               standing requirements apply. ...................................... 10

          B.    When traditional Article III requirements apply, SFFA's
               associational standing fails. ........................................ 16

CONCLUSION ............................................................................... 19

CERTIFICATE OF SERVICE ............................................................... 21

CERTIFICATE OF COMPLIANCE ........................................................ 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Allen v. McCurry*,
    449 U.S. 90 (1980) ................................................................................... 3

*Crane v. Johnson*,
    783 F.3d 244 (5th Cir. 2015) .............................................................. 8

*Fisher v. Univ. of Tex. at Austin*,
    570 U.S. 297 (2013) ............................................................................ 15

*Fisher v. Univ. of Tex. at Austin*,
    631 F.3d 213 (5th Cir. 2011) ............................................................ 15

*Fisher v. Univ. of Tex. at Austin*,
    758 F.3d 633 (5th Cir. 2014) ......................................................*passim*

*Fisher v. Univ. of Tex. at Austin*,
    136 S. Ct. 2198 (2016) ............................................................... 4, 5, 9

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ......................................................................*passim*

*Grutter v. Bollinger*,
    539 U.S. 306 (2003) ................................................... 11, 12, 13, 14

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ............................................................................ 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................... 11, 16

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*,
    11 F.4th 345 (5th Cir. 2021) .............................................................. 8

*Ne. Fla. Chapter of Assoc'd Gen. Contractors of Am. v. Jacksonville*,
    508 U.S. 656 (1993) ............................................................................ 14

*Regents of Univ. of Cal. v. Bakke*,
    438 U.S. 265 (1978) ......................................................................*passim*

*Simmons v. Burns*,
  No. H-87-732 (JAC), slip op. (D. Conn. Mar. 15, 1988) ........................................... 4

*Simmons v. United States*,
  53 Fed. Cl. 131 (Fed. Cl. 2002) ....................................................................... 4

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..................................................................................... 19

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
  No. 1:14-cv-14176, 2014 WL 6241935 (D. Mass.) ..................................... 15

*Students for Fair Admissions, Inc. v. Univ. of N.C., et al.*,
  No. 1:14-cv-954, 2014 WL 6386755 (M.D.N.C.) ......................................... 15

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
  Case No. D-1-GN-17-002930 (53rd Jud. Dist. Travis Cnty., Tex.) .......................... 4

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
  Case No. D-1-GN-19-002739 (53rd Jud. Dist. Travis Cnty., Tex.) .......................... 4

*Taylor v. Books A Million, Inc.*,
  296 F.3d 376 (5th Cir. 2002) ................................................................... 17, 18

*Tex. Democratic Party v. Benkiser*,
  459 F.3d 582 (5th Cir. 2006) ..................................................................... 8, 9

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ................................................................................. 16

*United States v. Davenport*,
  484 F.3d 321 (5th Cir. 2007) ......................................................................... 3

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..................................................................................... 11

**Other Authorities**

15A Charles Alan Wright & Arthur R Miller, <u>Federal Practice and
  Procedure</u> § 3904 (2d ed. 2021) .................................................................. 8

Federal Rule of Civil Procedure 12(b)(1) ............................................................ 19

## <u>ISSUES PRESENTED</u>

1.  Are SFFA's claims barred by res judicata or collateral estoppel?

2.  Does SFFA have associational standing?

# **SUMMARY OF ARGUMENT**

Intervenor Defendants-Appellees Black Student Alliance, Texas National Association for the Advancement of Colored People, Texas Orange Jackets, Adaylin Alvarez, Morgan Bennett, Brianna Mallorie McBride, Liz Kufour, Desiree Ortega-Santiago, Nima Rahman, Alexandra Trujillo, and Rosaleen Xiong ("Students-Appellees") respectfully request that the Court affirm the dismissal of Plaintiff Students for Fair Admissions, Inc.'s ("SFFA") claims in their entirety.

As in the proceedings below, Students-Appellees join and incorporate by reference Defendant-Appellee UT-Austin's brief requesting that this Court affirm the dismissal of SFFA's claims as barred under the doctrine of res judicata, or in the alternative that collateral estoppel bars SFFA's claims. On June 23, 2016, the Supreme Court put an end to the eight-year saga of the *Fisher* litigation, by upholding UT-Austin's race-conscious admissions program as lawful under the Equal Protection Clause. A year later, the "architect" of *Fisher*, Edward Blum, its plaintiff, Abigail Fisher, and her father, Richard Fisher, used SFFA—an organization that Mr. Blum created and that they collectively control—to file the state-court predecessor to the instant case. In other words, the *same* individuals have brought the *same* claims against the *same* UT-Austin policy. Their attempted end-run around *Fisher* undermines judicial predictability, drains judicial and state resources, and has thrust UT-Austin and its current and prospective students into a second decade of uncertainty.

SFFA's claims also should be dismissed because its Complaint does not adequately allege that the students upon whom SFFA relies to assert associational standing ("Standing Members") satisfy the requirements of Article III standing. SFFA hangs its proverbial standing hat on only *three facts*: its Standing Members (1) are white, (2) were denied admission, and (3) are ready and able to transfer. It does so based on the flawed assumption that a lower threshold standing showing applies in all affirmative-action challenges. Yet courts have applied this lower showing only to challenges to race-conscious policies like set-aside, quota, or bonus points programs, in which race is taken into consideration mechanically or students cannot compete for every available seat. In the two cases in which the Supreme Court has considered *holistic* race-conscious admissions policies, like that at UT-Austin, the plaintiffs have alleged facts concerning the merits of their applications and their likelihood of admission absent the policy at issue. As this Court has noted, in the absence of such allegations, standing arguments "carry force." *See Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 644 (5th Cir. 2014) (ultimately concluding that the Supreme Court's remand precluded reconsideration of the issue).

Because the traditional standing analysis applies, SFFA bears the burden of alleging that each element of Article III standing—injury in fact, causation, and redressability—is met as to each claim and each form of relief sought. But SFFA has neither alleged facts concerning the merits of its Standing Members' applications nor explained how a decision in SFFA's favor would impact, much less redress, its

Standing Members' injuries. Accordingly, SFFA's claims should be dismissed for failure to adequately allege associational standing.

## ARGUMENT

### I.    PLAINTIFF SFFA'S CLAIMS ARE BARRED BY THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL.

Res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *United States v. Davenport*, 484 F.3d 321, 325–26 (5th Cir. 2007) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)). Rarely has there been a more appropriate case for its application. For almost fourteen years, first as the self-professed "architect" (ROA.857:22–25) and plaintiff in the *Fisher* lawsuit, and now as the founder and directors of SFFA, Mr. Blum and Ms. Fisher have mounted a relentless attack against UT-Austin's race-conscious admissions program. Their latest plaintiff, SFFA, was formed to offer "a different avenue in which to challenge UT's use of race and ethnicity in its admissions policies"—the exact use at issue in *Fisher.* (ROA.815:16–18; ROA.901:3–5.) Their attempted end-run around *Fisher* undermines judicial predictability, drains judicial and state resources, and has thrust UT-Austin and its students into a second decade of uncertainty. Accordingly, Students-Appellees join UT-Austin's brief concerning res judicata and collateral estoppel.

In addition to his role as the architect, coordinator, and funder of the cases in which SFFA or the Project on Fair Representation (which funded *Fisher*) have

participated between 2008 and the present, Mr. Blum also acts as the "representative,"

"conduit," and decision-maker for the plaintiffs. *See* ROA.1525; ROA.1537–39. His

idea to use SFFA as a means of continuing to challenge UT-Austin's race-conscious

admissions program came to him on the very day the Supreme Court issued *Fisher v.

University of Texas at Austin*, 136 S. Ct. 2198 (2016) ("*Fisher II*"). (ROA.901:12–20.)

Only a year later, he filed a new lawsuit in state court, again challenging UT-Austin's

admissions program: *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, Case No.

D-1-GN-17-002930 (53rd Jud. Dist. Travis Cnty., Tex.). That case was dismissed for

lack of standing that same year. After searching for additional white applicants denied

admission to UT-Austin, Mr. Blum filed a second state court case asserting the same

claims: *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, Case No. D-1-GN-19-

002739 (53rd Jud. Dist. Travis Cnty., Tex.). That case was voluntarily dismissed in July

2020, and he immediately re-filed in federal court the instant case.

UT-Austin and Students-Appellees urge this Court to affirm the lower court,

"put an end to plaintiff's vendetta[,] and relieve its victims from the burden of

vexatious relitigation of these issues." *Simmons v. Burns*, No. H-87-732 (JAC), slip op.

at 13 (D. Conn. Mar. 15, 1988) (*quoted in Simmons v. United States*, 53 Fed. Cl. 131, 132

(2002), *aff'd*, 98 F. App'x 834 (Fed. Cir. 2003)). Among these victims are Students-

Appellees—eight current students of color at UT-Austin and three organizations

representing past, current, and prospective UT-Austin applicants—who continue to

be subjected to Mr. Blum and Ms. Fisher's tireless work to undermine their interest in

acquiring and improving upon the educational benefits of diversity. The *Fisher* case

questioned, among other things, whether having 4.1% African American students

constituted a critical mass; whether UT-Austin had a compelling interest justifying its

consideration of race; and what value, if any, increased racial diversity adds to

classrooms and campuses. *See Fisher II*, 136 S. Ct. at 2210–12. More fundamentally,

*Fisher* was grounded in the inaccurate, harmful, and divisive assumption that race-

conscious admissions policies disadvantage applicants of privilege and result in

applicants of color getting into school "because of their race." This notwithstanding

the Supreme Court's guidance that such policies merely allow admissions officials "to

consider all pertinent elements of diversity in light of the particular qualifications of

each applicant, and to place them on the same footing for consideration." *Regents of

Univ. of Cal. v. Bakke*, 438 U.S. 265, 317 (1978).

Most Students-Appellees were in elementary school when their merit and the

value of their racialized identity and experiences were first called into question by Mr.

Blum and Ms. Fisher, and most were in high school when the Supreme Court

pronounced, unequivocally, that UT-Austin's admissions program was lawful under

the Equal Protection Clause. *See Fisher II*, 136 S. Ct. at 2012–19. Yet their peace was

short-lived; Mr. Blum and the Fishers took only twelve months to use an organization

Mr. Blum created and they collectively now control, to mount essentially the same challenge to the same UT-Austin policy that was upheld in *Fisher*.[1]

Students-Appellees' declarations in the proceedings below reflect how UT-Austin's admissions policy is working to attract, admit, and enroll a highly qualified, diverse student body, while also demonstrating that UT-Austin has a ways to go. *See, e.g.*, ROA.351–56, ¶¶ 2–10, 14–17; ROA.363–66, ¶¶ 2–13, 15; ROA.371–75, ¶¶ 2–11, 13–15; ROA.377–84; ROA.387–90, ¶¶ 2–10, 13–16; ROA.394–403; ROA.405–12; ROA.418–20, ¶¶ 2–9. In painstaking detail, the declarations describe the feelings of racial isolation that students of color continue to feel on campus and the stigmatizing and harmful effect of SFFA's repetitive litigation. *See* ROA.358, ¶ 23; ROA.373–74, ¶ 12; ROA.382–83, ¶¶ 19–21; ROA.390–91, ¶ 17; ROA.428–29, at ¶ 14. They also describe the prevalence of the racist assumption that students of color did not "earn" admission to UT-Austin, as exemplified by an "affirmative action bake sale" held on campus by white students in which students of color were mockingly offered discount prices. *See* ROA.391, ¶ 18; ROA.419–20, ¶ 7; ROA.428–29, ¶ 14. The insidious racism behind such events is directly fueled by SFFA's litigation, which soberly alleges that current Black and Hispanic students are "academically mismatched" at UT-Austin. *See* ROA.56–57, ¶¶ 165–67. One student even recalls organizing and hosting a community

---

[1] And if this Court allows these claims to go forward, and UT-Austin prevails again, Mr. Blum will be able simply to form a new organization and file the same lawsuit yet again. This waste of resources and never-ending litigation is exactly what the doctrines of res judicata and collateral estoppel were intended to stop.

event in direct response to SFFA's suit against Harvard University, an objective indicator of the disruptive and harmful impact of SFFA's never-ending litigation strategy at UT-Austin and elsewhere throughout the country. *See* ROA.419–20, ¶ 7.

Students-Appellees' testimonials reflect the simple truth that UT-Austin must do *more* to achieve equity in admissions and on campus, not less. *See, e.g.*, ROA.356, ¶ 18 ("UT still has a long way to go to fully support students of color on campus."); ROA.382, ¶ 17 ("UT has many more steps to take to ensure that it is a welcoming community that is more racially diverse, not less."); ROA.410, ¶ 14 ("While UT's efforts to diversify the student body have led to many positive changes for students, our community has a long way to go before it is truly inclusive and welcoming."). And yet Mr. Blum's and Ms. Fisher's persistent, repetitive litigation does not allow students at UT-Austin even the small comfort of knowing that what progress that has been achieved—including applicants' ability to display and tell their "full story" in admissions—is secure. *See* ROA.353, ¶ 10. Instead, students are forced to endure Mr. Blum and Ms. Fisher's repeated attempts to censor applicants from disclosing their race or discussing their racial experience when applying—a possibility one student described as "erasing me as a student at UT as well as other students whose race has affected their whole lives." (ROA.392, ¶ 21.) The principles of finality behind res judicata and collateral estoppel were designed to prevent precisely such results.

## II.    THE COURT SHOULD AFFIRM DISMISSAL BECAUSE SFFA'S TWO MEMBERS LACK STANDING.

If the Court does not affirm dismissal on res judicata or collateral estoppel, Students-Appellees urge the Court to dismiss SFFA's complaint because it fails to adequately allege Article III standing for the two individual Standing Members on whose shoulders SFFA claims associational standing.[2] The district court erred when it summarily concluded that plaintiffs challenging a holistic race-conscious admissions plan need only allege that they are white, were denied admission, and are willing to transfer.[3] (ROA.1534.) Although courts have applied a less onerous standard that presumes injury-in-fact in challenges to race-conscious admissions plans that *automatically* place white applicants on unequal footing—such as set-aside programs

---

[2] This Court may review the standing jurisdictional issue without need for a more formal cross-appeal. *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (citing 15A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3904 (2d ed. 2021) ("arguments that support the judgment as entered can be made without a cross-appeal.")). The issue of standing is a legal question subject to review de novo. *Crane v. Johnson*, 783 F.3d 244, 250 (5th Cir. 2015).

[3] The district court further erred when it concluded that SFFA should get the benefit of standing "implicitly" found in *Fisher*. (ROA.1533.) As an initial matter, this Court expressly noted on remand in *Fisher* that "[t]he Supreme Court did not address the issue of standing, although it was squarely presented to it." 758 F.3d at 640. Moreover, while the claims in *Fisher* and here involve the same UT-Austin admissions policy and the parties are in privity (*see generally* UT-Austin Brief of Defendants-Appellees), that does not resolve the issue of whether SFFA has associational standing for its two Standing Members in this case. The court had a responsibility to determine whether SFFA's Standing Members could "independently meet the Article III standing requirements" for each of the claims and forms of relief sought. *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006); *see also infra* § II(B).

and those awarding bonus points for underrepresented students of color, *see, e.g, Gratz v. Bollinger*, 539 U.S. 244, 262 (2003), courts have not expressly applied such a standard to a holistic admissions plan like that at UT-Austin. And they should not.

At UT-Austin, "[the] consideration of race in admissions, . . . within the full context of the entire application, may be beneficial to any UT Austin applicant–including whites and Asian-Americans." *Fisher II*, 136 S. Ct. at 2207. The district court correctly concluded that the admissions program challenged in *Fisher* is the same challenged by SFFA today. *See* ROA.1541–43. Because SFFA has not and cannot allege how such a holistic admissions plan has now placed its Standing Members on unequal footing in applying to UT-Austin, there is no reason to presume injury and allow SFFA to circumvent the traditional standing requirements applied to each of its claims. *See Tex. Democratic Party*, 459 F.3d at 587 (requiring standing members to "independently meet the Article III standing requirements" for each of their claims). Indeed, in *Fisher*, this Court noted on remand that the standing questions raised as to Ms. Fisher were not properly before the court, but did recognize that challenges to her standing "carr[ied] force." 758 F.3d at 644. At the very least, there is an open question as to whether presumptive injury should apply in holistic race-conscious admissions cases where a white student's race could also be considered in the context of their greater application.

Under these circumstances, requiring SFFA to shoulder the same standing burdens as civil rights plaintiffs in other cases not only will help ensure that only real

cases and controversies are before the courts, but also will encourage those universities unable to achieve the educational benefits of diversity through other means to pursue the benefits through lawful holistic plans that ensure individualized consideration of each applicant. When such standing principles are applied to SFFA's claims, its complaint must be dismissed.

### A. Unlike other race-conscious admissions plans, UT-Austin's holistic admissions plan does not automatically place white applicants at a disadvantage; consequently, traditional standing requirements apply.

Neither this Court nor the Supreme Court has imposed a lower threshold standing showing where defendants directly challenge the standing of plaintiffs involving a holistic race-conscious admissions plan. Instead, courts that have presumed injury-in-fact have done so where the admissions programs at issue, like set-aside programs, quotas, and bonus points, automatically place certain students on unequal footing on the basis of race. As demonstrated below, courts do not and should not give plaintiffs like SFFA the benefit of the doubt when weighing standing in cases challenging holistic race-conscious admissions plans like UT-Austin's, because there is no government-imposed burden placing anyone on unequal footing solely because of their race. And the courts must ensure that plaintiffs challenging such admissions plans plead facts supporting each standing requirement for each claim and

not *presume* standing, as the district court did here, solely because plaintiffs with similar claims against other universities in other cases were found to have standing.[4]

The Supreme Court first addressed the issue of standing in higher education affirmative-action cases in *Regents of University of California v. Bakke*, 438 U.S. 265 (1978). There, the Medical School of the University of California at Davis created a special admissions committee that considered applications from "disadvantaged" students for sixteen out of the total one-hundred seats available. *Id.* at 273–75. The students admitted under the special admissions track were underrepresented students of color. *Id.* at 275. Alan Bakke, a white applicant, was denied admission and challenged the special admissions program. *Id.* at 275–77.

Although the defendants did not challenge Bakke's standing, the Court decided *sua sponte* to review its jurisdiction to hear the case under Article III. The Court first determined that Bakke was required to demonstrate that his injury would be redressed by a favorable decision. *Id.* at 281, n.14 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The Court concluded that he sustained the requisite injury *because he was not*

---

[4] The district court erred when it presumed that because the Supreme Court found that the plaintiffs in *Grutter* had standing to raise similar claims against the University of Michigan's law school admissions policy, the plaintiff here, SFFA, must also have standing. *See* ROA.1533–34. The Supreme Court's holding in *Grutter* was based on the record and the pleadings made by Ms. Grutter in that case. It is a bedrock standing principle that the district court in this case had a duty to ensure that SFFA, through its Standing Members, has a well-pleaded complaint supporting each of the standing elements to each of its claims and requests for relief against UT-Austin. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

*permitted to compete for the seats set aside* for underrepresented students of color solely because of his race. *Id.* The Court differentiated between the harm imposed by this set-aside program with Harvard's holistic admissions program, stating:

> No such facial infirmity exists in an admissions program where race or ethnic background is simply one element—to be weighed fairly against other elements—in the selection process. . . . an admissions program operated in this way is flexible enough to consider all pertinent elements of diversity in light of the particular qualifications of each applicant, *and to place them on the same footing for consideration*").

*Id.* at 317–18 (emphasis added). The facts in *Bakke* contrast with those here, where SFFA has not alleged how its Standing Members' injuries would be redressed by a favorable decision or how they were not permitted to compete for admission because of their race. *See, e.g.*, ROA.174–75, ¶¶ 3–8. Nor can such facts be presumed where they have not been well pled. *See Bakke*, 438 U.S. at 318–19 ("[A] court would not assume that a university, professing to employ a facially nondiscriminatory admissions policy, would operate it as a cover for the functional equivalent of a quota system. In short, good faith would be presumed in the absence of a showing to the contrary[.]").

*Grutter v. Bollinger*, 539 U.S. 306 (2003) also supports application of traditional standing requirements to SFFA's claim. In *Grutter*, the Supreme Court weighed a challenge to a law school's holistic race-conscious admissions plan under which plaintiff Barbara Grutter was denied admission. Although the Supreme Court held that the plaintiff in *Grutter* had standing, the Court notably reached that conclusion only after observing that the plaintiff had affirmatively alleged both her qualifications

for admissions and that "her application was rejected *because* [of] the Law School['s] use[ of] race as a 'predominant' factor" in admissions. *See id.* at 317 (emphasis added). Here, SFFA fails to allege any facts regarding the qualifications of its members and whether or how its members have been rejected *because* of any asserted action by UT-Austin.[5] Moreover, there is no suggestion that the Court in *Grutter* considered the same challenge made here by Students-Appellees, namely that a challenge to a holistic admissions plan cannot rest on bare assumptions of presumed injury and redressability. Accordingly, *Grutter* underscores how SFFA has failed to carry its burden to allege standing.

*Gratz v. Bollinger*, 539 U.S. 244 (2003), likewise does not foreclose a challenge to SFFA's members' standing.[6] There, plaintiffs' class representative Patrick Hamacher had previously applied for, and was denied, admission to the University of Michigan Literature, Science and the Arts ("UMLSA") undergraduate program. *Id.* at 262. The undergraduate program awarded twenty bonus points for each applicant from an

---

[5] And, as in *Bakke*, the Court in *Grutter* distinguished burdensome set-aside programs from holistic admissions plans that consider race merely as a "plus" factor for a particular applicant, which place applicants "on the same footing for consideration." *Id.* at 334–37.

[6] The analysis in *Gratz* bears few similarities to the issues presented here. First, neither party raised the issue of standing. *See* 539 U.S. at 260. Moreover, although the Court raised the issue *sua sponte*, it did not address the standing arguments that Students-Appellees make here. To the contrary, the Court in *Gratz* considered only (1) whether the petitioners satisfied Article III requirements without showing that they actually applied for a transfer, *id.* at 261; and (2) whether the plaintiff had standing as a class representative for all classes of applicants, *id.* at 262.

underrepresented racial or ethnic group. *Id.* at 255. After being denied admission as a

freshman, Hamacher filed a class-action lawsuit, alleging that he and other similarly

situated students intended to transfer or reapply to UMLSA if the university ceased its

alleged discriminatory admissions program. *Id.* at 262. In discussing the standing of

Hamacher raised in Justice Stevens' dissent (and not raised by the defendants), the

Court analogized the awarding of points to certain students solely because of their

race and ethnicity at UMLSA to set-aside programs. *Id.* (citing *Ne. Fla. Chapter of

Assoc'd Gen. Contractors of Am. v. Jacksonville,* 508 U.S. 656 (1993) ("*Northeastern

Contractors*")). The Court recognized that "*in the context of a challenge to a set-aside program,*

the 'injury in fact' is the inability to compete on an equal footing in the bidding

process…." *Id.* (quoting *Northeastern Contractors,* 508 U.S. at 666) (emphasis added)).

Even then, the Court affirmed that Hamacher had standing only after observing, as in

*Grutter,* that Hamacher had affirmatively alleged that "he was denied admission *even

though an underrepresented minority applicant with his qualifications would have been admitted.*" *Id.*

(emphasis added). In short, the Court concluded that he had standing only after

finding that the challenged admissions program was of the type that allowed for a

presumption of injury-in-fact *and* after analyzing additional, specific findings as to

Hamacher's qualifications against other applicants. *Id.* at 262–65.

Here, SFFA has not met even these minimal pleading requirements, much less

those that should apply to admissions plans, like UT-Austin's, that do not place white

applicants on unequal footing. The program here is not similar to the set-aside

program in *Bakke* or the additional points awarded in *Gratz*. It is a holistic admissions plan that judges all applicants based on a "broader array of qualifications and characteristics of which racial or ethnic origin is but a single though important element." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 308 (2013) ("*Fisher I*") (citing *Bakke*, 438 U.S. at 315).

    *Fisher* also does not suggest that plaintiffs challenging holistic admissions plans need only plead that they are white, were denied admission, and are willing to transfer. The Supreme Court never addressed the issue of Ms. Fisher's standing. As noted above, this Court expressed concerns about standing on remand after *Fisher I*, but felt hamstrung because the Supreme Court did not ask this Court to address the issue.[7] *See* 758 F.3d at 644. Moreover, even in Ms. Fisher's complaint, she alleged several facts pertaining to her qualifications and injuries.[8] *See* Second Am. Compl., No. 1:08-cv-263, 2008 WL 7318510, ¶¶ 7–17, 104–41 (W.D. Tex.).

---

    [7] In this Court's earlier opinion in 2011 that was vacated by the Supreme Court, this Court did hold that Ms. Fisher lacked standing to pursue prospective relief but did have standing to challenge her rejection and to pursue her damages claim. *Fisher v. Univ. of Tex. at Austin*, 631 F.3d 213, 217 (5th Cir. 2011), *vacated and remanded by* 570 U.S. 297 (2013). However, the grounds argued here were not argued by UT-Austin.

    [8] Even in SFFA's complaints filed against Harvard College and the University of North Carolina, it asserted several facts regarding the standing members' qualifications and injuries in contrast to its complaint against UT-Austin. *Compare* ROA.174–75, ¶¶ 5–8, *with, e.g.*, Compl., *SFFA v. President & Fellows of Harvard College*, No. 1:14-cv-14176, 2014 WL 6241935, ¶¶ 15–28 (D. Mass.), *and* Compl., *SFFA v. Univ. of N.C., et al.*, No. 1:14-cv-954, 2014 WL 6386755, ¶¶ 13–24 (M.D.N.C.).

Accordingly, no precedent holds SFFA does not need to plead sufficient facts demonstrating its Standing Members' injury-in-fact, traceability, and redressability for each of the claims. And this Court should not hold otherwise to ensure that only real cases and controversies are before the courts.

## B. When traditional Article III requirements apply, SFFA's associational standing fails.

Deprived of the crutch of the watered-down standing analysis applicable "in the context of a challenge to a set-aside program," *Gratz*, 539 U.S. at 262, SFFA is left with the burden of demonstrating that its Standing Members meet the traditional three-part standing test set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Specifically, SFFA must show that the Standing Members on whom their claim of associational standing rests[9] (1) have suffered an injury in fact; (2) that this injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61. SFFA must establish these elements "for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). And it must do with well-pleaded

---

[9] A plaintiff seeking to establish associational standing to bring suit on behalf of its members is required to demonstrate, among other things, that "its members would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

facts, not conclusory allegations and general grievances. *See Bakke*, 438 U.S. at 318; *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal citation omitted).

Having persisted in the argument that traditional standing principles do not apply to its never-ending campaign against race-conscious admissions programs, it should come as no surprise that SFFA has not satisfied any of these elements. Indeed, it does not even try. In support of its Standing Members' ability to bring its claims, SFFA offers only three allegations: (1) that its members "applied for and were denied admission to UT-Austin's 2018 and 2019 entering classes;" (2) that these members were "denied the opportunity to compete for admission to UT-Austin on equal footing with other applicants on the basis of race or ethnicity because of UT-Austin's discriminatory admissions policies;" and (3) that these members "are ready and able to apply to transfer to UT-Austin when it stops discriminating against applicants on the basis of race and ethnicity." (ROA.174–75, ¶¶ 5–6, 8.) That's it. SFFA alleges no facts concerning the merits of its Standing Members' applications, or suggesting that the race-conscious nature of UT-Austin's admissions policy impacted them in any way, much less that the consideration of race within the admissions process led to their denial or would be redressed by a decision requiring the process to be race-blind.

The Standing Members' white race and their status as rejected applicants and prospective transfer students to UT-Austin is not, and cannot be, enough to establish

standing.[10] SFFA's allegations say nothing about how its Standing Members have been injured by the conduct complained of, how their future injury is likely—as opposed to merely speculative, or how any injury would be redressed by a decision in SFFA's favor. And the remainder of the allegations in SFFA's Complaint are untethered to the individual experience of its Standing Members, and essentially amount to nothing more than general grievances, conclusory allegations, and legal conclusions masked as factual allegations, which do not suffice to avoid a motion to dismiss. *See Taylor*, 296 F.3d at 378; *see, e.g.*, ROA.212, ¶ 200 ("employing an undergraduate admissions policy that does not merely use race as a 'plus' factor in admissions decisions to achieve student body diversity."); ROA.213–14, ¶ 209 ("employing racial preferences in undergraduate admissions when there are available race-neutral alternatives capable of achieving student body diversity, as its own practices already demonstrate."); ROA.215, ¶ 220 ("employing an undergraduate admissions policy that balances the class according to its racial or ethnic composition."); ROA.217, ¶ 231 ("employing an undergraduate admissions policy that uses race as a factor in admissions.").

---

[10] This is especially true with respect to SFFA's Counts 1 (alleged use of race as more than a plus factor), 2 (failure to consider race-neutral alternatives), and 4 (any consideration of race by UT is unlawful), as well as to its claim for relief seeking to bar UT-Austin from knowing or becoming aware of an applicant's race. *See* ROA.635–43. SFFA alleges no specific facts in support of these claims at all. Were this Court to hold that SFFA had standing to pursue them, there would be no limit to lawsuits by students denied admission.

The point of this is not to argue with the merits of SFFA's legal claims, but to demonstrate that under Federal Rule of Civil Procedure 12(b)(1), SFFA has failed to "clearly . . . allege facts demonstrating" each element of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), and its Complaint must be dismissed.

## **<u>CONCLUSION</u>**

For the above stated reasons, Students-Appellees respectfully urge the Court to affirm dismissal.

Dated: December 3, 2021          Respectfully submitted,

                                 /s/ David Hinojosa
                                 David Hinojosa
                                 Genevieve Bonadies Torres
                                 **LAWYERS' COMMITTEE FOR CIVIL
                                   RIGHTS UNDER LAW**
                                 1500 K Street, N.W., Suite 900
                                 Washington, DC 20005
                                 Telephone: (202) 662-8600
                                 dhinojosa@lawyerscommittee.org
                                 GBonadies@lawyerscommittee.org>

                                 Brian C. Pidcock
                                 **HUNTON ANDREWS KURTH LLP**
                                 600 Travis Street
                                 Houston, TX 77002
                                 Telephone: (713) 220-4200
                                 brianpidcock@HuntonAK.com

                                 Neil K. Gilman
                                 **HUNTON ANDREWS KURTH LLP**
                                 2200 Pennsylvania Avenue, N.W.
                                 Washington, D.C. 20037
                                 Telephone: (202) 955-1500
                                 ngilman@HuntonAK.com

                                 *Attorneys for Intervenor Defendants-Appellees*

# **CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ David Hinojosa*
David Hinojosa

*Counsel for Intervenor Defendants-Appellees*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,010 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Garamond font size 14.

*/s/ David Hinojosa*
David Hinojosa

*Counsel for Intervenor Defendants-Appellees*