No. 21-50715

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

STUDENTS FOR FAIR ADMISSIONS, INCORPORATED,
*Plaintiff-Appellant,*

v.

UNIVERSITY OF TEXAS AT AUSTIN; JAMES B. MILLIKEN, CHANCELLOR OF THE UNIVERSITY OF TEXAS SYSTEM IN HIS OFFICIAL CAPACITY; STEVEN LESLIE, EXECUTIVE VICE CHANCELLOR FOR ACADEMIC AFFAIRS OF THE UNIVERSITY OF TEXAS SYSTEM IN HIS OFFICIAL CAPACITY; DANIEL H. SHARPHORN, VICE CHANCELLOR AND GENERAL COUNSEL OF THE UNIVERSITY OF TEXAS SYSTEM IN HIS OFFICIAL CAPACITY; JAY HARTZELL, INTERIM PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN IN HIS OFFICIAL CAPACITY; BOARD OF REGENTS OF THE TEXAS STATE UNIVERSITY SYSTEM; DAVID J. BECK, MEMBER OF THE BOARD OF REGENTS IN HIS OFFICIAL CAPACITY; CHRISTINA MELTON CRAIN, MEMBER OF THE BOARD OF REGENTS IN HER OFFICIAL CAPACITY; KEVIN P. ELTIFE, MEMBER OF THE BOARD OF REGENTS IN HIS OFFICIAL CAPACITY; R. STEVEN HICKS, MEMBER OF THE BOARD OF REGENTS IN HIS OFFICIAL CAPACITY; JODIE LEE JILES, MEMBER OF THE BOARD OF REGENTS IN HIS OFFICIAL CAPACITY; JANIECE LONGORIA, MEMBER OF THE BOARD OF REGENTS IN HER OFFICIAL CAPACITY; NOLAN PEREZ, MEMBER OF THE BOARD OF REGENTS IN HIS OFFICIAL CAPACITY; KELCY L. WARREN, MEMBER OF THE BOARD OF REGENTS IN HIS OFFICIAL CAPACITY; JAMES C. (RAD) WEAVER, MEMBER OF THE BOARD OF REGENTS IN HIS OFFICIAL CAPACITY; DANIEL JAFFE, INTERIM EXECUTIVE VICE PRESIDENT AND PROVOST; RACHELLE HERNANDEZ, SENIOR VICE PROVOST FOR ENROLLMENT MANAGEMENT AND STUDENT SUCCESS; MIGUEL WASIELEWSKI, EXECUTIVE DIRECTOR FOR OFFICE OF ADMISSIONS,
*Defendants-Appellees,*

THE BLACK STUDENT ALLIANCE; THE TEXAS ORANGE JACKETS; TEXAS NAACP; ADAYLIN ALVAREZ; MORGAN BENNETT; LIZ KUFOUR; BRIANNA MALLORIE MCBRIDE; DESIREE ORTEGA-SANTIAGO; NIMA RAHMAN; ALEXANDRA TRUJILLO; ROSALEEN XIONG,
*Intervenor Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Texas, No. 1:20-cv-763 (Pitman, J.)

## REPLY BRIEF OF APPELLANT
## STUDENTS FOR FAIR ADMISSIONS, INC.

William S. Consovoy
Thomas R. McCarthy
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Students for Fair Admissions, Inc.*

# TABLE OF CONTENTS

Table of Authorities .................................................................................ii

Introduction .......................................................................................... 1

Argument ............................................................................................. 2

    I.   SFFA has standing to bring its claims. ............................................ 2

        A.   The indicia-of-membership test does not apply to voluntary
membership organizations like SFFA. ............................................3

        B.   SFFA has associational standing even if the Court were to break new
ground and extend the indicia-of-membership test to voluntary
membership organizations. ...................................................... 10

        C.   SFFA's members have standing to sue in their own right...................... 18

    II.   SFFA's claims are not barred by claim preclusion. ......................... 20

        A.   SFFA is not identical to or in privity with Abigail Fisher........................ 20

        B.   This case and *Fisher* do not have the same claim or cause of action. ..... 22

    III.  SFFA's claims are not barred by issue preclusion. ........................... 24

Conclusion......................................................................................... 25

Certificate of Service .......................................................................... 27

Certificate of Compliance ................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*AARP v. EEOC,*
    226 F. Supp. 3d 7 (D.D.C. 2016) .................................................. 15

*Am. Legal Found. v. FCC,*
    808 F.2d 84 (D.C. Cir. 1987) ....................................................... 17

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,*
    627 F.3d 547 (5th Cir. 2010) ..................................................... 3, 5

*Benson & Ford, Inc. v. Wanda Petroleum Co.,*
    833 F.2d 1172 (5th Cir. 1987) ................................................ 24, 25

*Calif. Sportfishing Prot. All. v. Diablo Grande Inc.,*
    209 F. Supp. 2d 1059 (E.D. Cal. 2002) ........................................... 6

*Citizens Coal Council v. Matt Canestrale Contracting, Inc.,*
    40 F. Supp. 3d 632 (W.D. Pa. 2014) ..................................... *passim*

*Disability Rights Pa. v. Pa. Dep't of Human Servs.,*
    2020 WL 1491186 (M.D. Pa. 2020) ............................................. 10

*Doe v. Hesketh,*
    828 F.3d 159 (3d Cir. 2016) ......................................................... 20

*Duckett v. Fuller,*
    819 F.3d 740 (4th Cir. 2016) ....................................................... 20

*Duffie v. United States,*
    600 F.3d 362 (5th Cir. 2010) ....................................................... 24

*Familias Unidas v. Briscoe,*
    619 F.2d 391 (5th Cir. 1980) ..................................................... 4, 5

*Fisher v. Univ. of Tex. at Austin* ("Fisher I"),
    570 U.S. 297 (2013) ................................................................... 19

*Fisher v. Univ. of Tex. at Austin* ("Fisher II"),
    136 S. Ct. 2198 (2016) ...................................................... 19, 24, 25

*Fisher v. Univ. of Tex. at Austin,*
    631 F.3d 213 (5th Cir. 2011) ....................................................... 19

*Fisher v. Univ. of Tex. at Austin,*
    758 F.3d 633 (5th Cir. 2014) ....................................................... 19

*Flyers Rights Educ. Fund, Inc. v. U.S. Dep't of Transp.*,
  957 F.3d 1359 (D.C. Cir. 2020) .............................................................. 10, 15

*Friends of the Earth, Inc. v. Chevron Chem. Co.*,
  129 F.3d 826 (5th Cir. 1997) .................................................... *passim*

*Fund Democracy, LLC v. SEC*,
  278 F.3d 21 (D.D.C. 2002) ................................................................. 11

*Funeral Consumers All., Inc. v. Service Corp. Int'l*,
  695 F.3d 330 (5th Cir. 2012) .............................................................. 10

*Gay-Straight All. of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cty.*,
  477 F. Supp. 2d 1246 (S.D. Fla. 2007) ................................................. 5

*Gratz v. Bollinger*,
  539 U.S. 244 (2003) ..................................................................... 2, 18

*Grayson v. Warden, Comm'r, Ala. Doc*,
  869 F.3d 1204 (11th Cir. 2017) ......................................................... 20

*Gulf Restoration Network v. Salazar*,
  683 F.3d 15 (5th Cir. 2012) ............................................................... 5

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*,
  434 F.3d 320 (5th Cir. 2005) .......................................................... 24, 25

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ........................................................................ 6

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ................................................................... 2, 6, 12

*Mayorga Santamaria ex rel. Doe Child. 1-3 v. Dallas Indep. Sch. Dist.*,
  No. 6-cv-692, 2006 WL 3350194 (N.D. Tex.) ........................................ 5

*Meza v. Gen. Battery Corp.*,
  908 F.2d 1262 (5th Cir. 1990) .......................................................... 21

*Or. Advoc. Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) .................................................. 13, 14, 15

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
  No. 83-cv-513, 1984 WL 6618 (D.N.J.) ............................................... 13

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) ........................................................................ 4

*Petro-Hunt, LLC v. United States*,
  365 F.3d 385 (5th Cir. 2004) ............................................................. 23

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*,
  123 F.3d 111 (3d Cir. 1997) ........................................................................6

*SFFA v. Harvard*,
  261 F. Supp. 3d 99 (D. Mass. 2017) ................................................. *passim*

*SFFA v. Harvard*,
  980 F.3d 157 (1st Cir. 2020) ............................................................ *passim*

*SFFA v. UNC*,
  No. 14-cv-954, 2018 WL 4688388 (M.D.N.C.) ................................. *passim*

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) ......................................................................4

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .................................................................................. 10

*Sylvia's Haven, Inc. v. Mass. Dev. Fin.*,
  397 F. Supp. 2d 202 (D. Mass. 2005) ................................................. 13, 14

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ............................................................................ 20, 22

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ....................................................................................6

*Wash. Legal Found. v. Leavitt*,
  477 F. Supp. 2d 202 (D.D.C. 2007) .................................................... 11, 13

## STATUTES

Va. Code §13.1-823 .........................................................................................8

Va. Code §13.1-828 .........................................................................................7

Va. Code §13.1-837 .........................................................................................7

Va. Code §13.1-845 .........................................................................................7

Va. Code §13.1-861 .........................................................................................7

## OTHER AUTHORITIES

Ann E. Carlson, *Standing for the Environment*,
  45 UCLA L. Rev. 931 (1998) ................................................................... 16

*Hundreds Gather for Dueling Rallies Ahead of Trial Challenging Harvard Admissions*,
  The Harvard Crimson (Oct. 15, 2018) ...................................................... 17

NAACP 2018 Annual Report...............................................................14

Shawn L. Alexander, *An Army of Lions: The Civil Rights Struggle Before the NAACP* (2012) ..............................................................................14

Sierra Club 2019 Annual Report ........................................................14

## INTRODUCTION

Unable to defend the district court's claim-preclusion holding, UT and the Intervenors devote most of their briefs to standing arguments that were rejected below. But it's not just the district court that rejected these arguments. *Every court* to examine this issue has held that SFFA has standing to bring these types of claims. *See SFFA v. Harvard*, 980 F.3d 157, 183-84 (1st Cir. 2020) (affirming *SFFA v. Harvard*, 261 F. Supp. 3d 99, 103-11 (D. Mass. 2017)); *SFFA v. UNC*, No. 14-cv-954, 2018 WL 4688388, at *3-6 (M.D.N.C.). Undeterred, UT seeks to distinguish these cases by proposing a *new* test for associational standing—one that Harvard, UNC, and multiple federal courts all somehow missed. According to UT, a membership organization that does not have "statutory" members under the state law in which it is incorporated must show the "indicia of membership" to prove Article III standing in federal court. But no court— including this one—has ever imposed such a test. SFFA is a traditional membership organization that plainly has standing to bring this lawsuit.

On the remaining issues, UT is displeased with the fact that its race-based admissions program is being challenged again in court, but none of that displeasure amounts to a defense under long-standing principles of res judicata. SFFA is a 501(c)(3) organization with more than 20,000 members and a five-person board of directors. SFFA is not in privity with Abigail Fisher, an individual student who sued UT when it denied her admission in 2008. That Ms. Fisher and Edward Blum now serve on SFFA's board is irrelevant. Nonparty preclusion occurs only in narrow circumstances, none of

which are present here. Nor are the facts and issues the same today as they were 13 years ago when Fisher filed her lawsuit. SFFA's case is not barred by claim or issue preclusion. This case should be decided on the merits.

## ARGUMENT

### I.    SFFA has standing to bring its claims.

A membership association has Article III standing if it satisfies three requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). UT does not dispute that SFFA satisfies these requirements. Nor could it.

First, SFFA's members have standing to sue in their own right because UT denied them "the opportunity to compete for admission on an equal basis," and SFFA has "demonstrated that [its members are] 'able and ready' to apply as a transfer student should [UT] cease to use race in undergraduate admissions." *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003); *see* ROA.174-75 [¶¶3-8]; ROA.188-207 [¶¶86-175]; ROA.211-21 [¶¶198-244]; ROA.1395 [¶¶4-7, 9-11]; ROA.1228 [¶¶20-21]; ROA.1398-99 [¶¶3-6]; ROA.1401-02 [¶¶3-6]; ROA.1280:9-12; ROA.1290:3-10; ROA.1292:2-5; *accord Harvard*, 980 F.3d at 183-84; *Harvard*, 261 F. Supp. 3d at 109-11; *UNC*, 2018 WL 4688388, at *5. Second, this lawsuit is germane to SFFA's mission "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law,

through litigation and any other lawful means." ROA.1341; *accord Harvard*, 980 F.3d at 183-84; *Harvard*, 261 F. Supp. 3d at 110; *UNC*, 2018 WL 4688388, at *5. Third, this case does not require participation of individual members because SFFA seeks only "declaratory and injunctive relief." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010); *accord Harvard*, 261 F. Supp. 3d at 110; *Harvard*, 980 F.3d at 183-84; *UNC*, 2018 WL 4688388, at *6. Under governing law, this should end the matter.

Instead, UT argues that SFFA lacks standing unless its members exhibit "indicia of membership." UT-Br. 18-32. UT is wrong. The indicia-of-membership test applies to organizations that *lack* members; it does not apply to voluntary membership associations like SFFA. Regardless, even if the indicia-of-membership test somehow applied here, SFFA would easily satisfy it.

### A.    The indicia-of-membership test does not apply to voluntary membership organizations like SFFA.

Because SFFA "is, on its face, a traditional voluntary membership organization, the indicia of membership test is inapplicable." *Harvard*, 980 F.3d at 183. SFFA is a "validly incorporated 501(c)(3) nonprofit with [more than 20,000] members who joined voluntarily to support its mission." *Id.* at 184. SFFA's Bylaws create "one class of members, referred to as General Members." ROA.1341. Under the Bylaws, membership is open to "[a]ny individual who seeks to support the purposes and mission of [SFFA], pays membership dues as may be prescribed by the Board of Directors, and

meets any additional standards and procedures that may be prescribed from time to time by the Board of Directors." ROA.1341-42. SFFA's Board of Directors has set membership dues at $10. ROA.1335. The Standing Members satisfied SFFA's membership requirements and are members of SFFA. *See* ROA.1395 [¶4]; ROA.1399 [¶¶6-7]; ROA.1402 [¶¶6-7]. In short, "SFFA seeks to represent individuals who are clearly members as defined by its Bylaws." *Harvard*, 261 F. Supp. 3d at 108.

These basic facts are "sufficient to conclude that SFFA is a valid membership organization" that has "associational standing to pursue its claims." *Harvard*, 980 F.3d at 184. As the District of Massachusetts put it:

> Where SFFA has clearly stated its mission in its Bylaws and website, where it has consistently, and recently, in highly public ways, pursued efforts to end alleged racial discrimination in college admissions through litigation, and where its members voluntarily associate themselves with the organization, it can be presumed for the purposes of standing that SFFA adequately represents the interests of its current members without needing to test this further based on the indicia-of-membership factors.

*Harvard*, 261 F. Supp. 3d at 109; *UNC*, 2018 WL 4688388, at *5 (same).

UT argues that an organization cannot be a "traditional membership organization" under *Hunt* unless it has "members under the state laws governing its formation." UT-Br. 19. No court—including the Supreme Court and the Fifth Circuit—has ever conducted this inquiry of a voluntary membership association. *See, e.g.*, *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 713, 718-20 (2007); *Familias Unidas v. Briscoe*, 619 F.2d 391, 395, 398 n.7 (5th Cir. 1980); *Speech First,*

*Inc. v. Fenves*, 979 F.3d 319, 322, 338 (5th Cir. 2020); *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 164, 166-68 (5th Cir. 2012); *Ass'n of Am. Physicians*, 627 F.3d at 549-53. UT has no explanation for why these courts (and many more) never examined whether these organizations have "statutory" members under the state law in which they were incorporated. *See Harvard*, 261 F. Supp. 3d at 107 n.9 (crediting similar silences in the caselaw because, if the indicia-of-membership test were mandatory and jurisdictional, then courts would not be free to "ignore" it, even "when the issue of whether an association is a genuine membership organization is undisputed").

That no court has adopted UT's test for associational standing is not surprising. It is neither logical nor workable. Under UT's theory, no unincorporated membership organization could ever be a "traditional membership organization" because it would have no "statutory" members. Yet courts, including the Fifth Circuit, regularly find that these types of membership organizations have standing without applying the indicia-of-membership test. *See, e.g.*, *Familias Unidas*, 619 F.2d at 395, 398 n.7 (Familias Unidas, a "loosely structured [unincorporated] organization of Mexican-American students and adults"); *Gay-Straight All. of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cty.*, 477 F. Supp. 2d 1246, 1248, 1251-52 (S.D. Fla. 2007) (an "unincorporated, voluntary association of [high school] students"); *Mayorga Santamaria ex rel. Doe Child. 1-3 v. Dallas Indep. Sch. Dist.*, No. 6-cv-692, 2006 WL 3350194, at *6, *29-30 (N.D. Tex.) (an "unincorporated non-profit organization" "comprised of approximately fifty (50) members who were concerned parents of Latino students enrolled at Preston Hollow"). Membership

organizations also would be entirely at the mercy of state law. No organization could be a "traditional membership organization" with Article III standing unless it complied with every state obligation for "members," no matter how onerous. But "standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). No State can dictate to federal courts which kinds of organizations do and don't qualify for associational standing. *Id.*; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 n.8 (1977). And Article III's concerns—ensuring live controversies between adverse parties with concrete interests—are not furthered by having plaintiffs follow irrelevant state procedure.

None of UT's cases support its theory of standing. In *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.* ("*PIRG*"), the defendants "contended at oral argument" that the plaintiff organizations "lacked standing because their charters prohibit them from having members." 123 F.3d 111, 119 (3d Cir. 1997). The Third Circuit summarily rejected "this formalistic argument" because the organizations' members clearly "possess[ed] the 'indicia of membership' in their organization." *Id.* (citing *Hunt*, 432 U.S. at 344). The Third Circuit simply "took membership as a given and went on to discuss the first factor identified in *Hunt*, whether the individual members would have standing to sue on their own." *Calif. Sportfishing Prot. All. v. Diablo Grande Inc.*, 209 F. Supp. 2d 1059, 1066 (E.D. Cal. 2002) (distinguishing *PIRG*). The Third Circuit never even hinted that the indicia-of-membership test must apply if an organization has no "statutory" members under state law. SFFA also is distinguishable

factually to the organization in *PIRG* because all of SFFA's founding documents—as well as its amended bylaws—make clear that SFFA has "members." *See* ROA.1308, 1353, 1341; *infra* at 8-9.

*Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826 (5th Cir. 1997), likewise had "factual circumstances triggering the indicia-of-membership analysis [that] are not present here." *Harvard*, 261 F. Supp. 3d at 108. Specifically, the organization's "bylaws provide[d] that membership requirements shall be set by the board of directors," but the organization had "never taken any formal affirmative action to comply with its responsibility and authority to determine membership requirements." *Friends of the Earth*, 129 F.3d at 827. Accordingly, this Court considered whether the "corporation, *despite the failure to meet state law requirements*, ha[d] 'members' whose interests it can represent in federal court." *Id.* at 829 (emphasis added). As in *PIRG*, nothing in *Friends of the Earth* ever suggests that the threshold inquiry under *Hunt* is whether the organization has "statutory" members as defined by state law. *Id.*

SFFA has not "fail[ed] to meet state law requirements" in any event. *Id.* The Virginia Nonprofit Corporations Act authorizes nonprofit corporations to create a class of "members" who are akin to shareholders. *See* Va. Code §13.1-837. These statutory members then have certain rights by default under state law. *See, e.g., id.* §13.1-828(B)(1) (right to challenge the actions the corporation has taken); *see also id.* §13.1-861; *id.* §13.1-845(B), (D). Although a membership organization can create these statutory "members," nothing in Virginia law *requires* membership organizations to do so.

Membership organizations remain free to create any other class of "members" under their bylaws and give them certain rights pursuant to the bylaws. *See id.* §13.1-823(B) ("The bylaws of a corporation may contain any provision that is not inconsistent with law or the articles of incorporation."); *see also* ROA.1532. That is what SFFA did here. *See* ROA.1294; ROA.1341.

There is no "conflict" between SFFA's articles of incorporation and its bylaws. UT-Br. 20-21, 24-26. Both documents make clear that SFFA has "one class of members, referred to as General Members," but it does not have "'members' within the meaning of the [Virginia Nonstock Corporation] Act." ROA.1341; ROA.1294 (SFFA "shall have no members" within the meaning of the "Virginia Nonstock Corporation Act"). As the court below properly found, there is no "inconsistency between SFFA's articles of incorporation and its bylaws that would impact SFFA's standing in this case." ROA.1532.

UT focuses myopically on the phrase "the Corporation shall have no members" in SFFA's articles of incorporation. ROA.1294. But this sentence obviously refers to "members" within the meaning of the Virginia Nonstock Corporation Act, which the same document references just two sentences earlier. *Id.* As the President of SFFA put it, "[SFFA] has always been . . . a membership organization. This sentence, [']the corporation shall have no members[,'] that's . . . with the statutory requirements under the Virginia Nonstock Corporation Act, but [SFFA] has always had members. It was conceived that way. And it was executed that way." ROA.1260:21-1261:3; *see*

ROA.1258:18-23, 1267:16-24 (same). For example, SFFA's original bylaws, which were adopted simultaneously with the articles of incorporation, stated that SFFA "shall have no members within the meaning of the [Virginia Nonstock Corporation] Act" but "shall have one class of affiliate members with rights, privileges, and obligations established by the Board of Directors." ROA.1308. Similarly, in its 501(c)(3) application, which was filed shortly after the articles of incorporation were adopted, SFFA repeatedly referenced its "members" and described itself as "a coalition of prospective applicants and applicants to higher education institutions who were denied admission to higher education institutions, their family members, and other individuals who support the organization's purpose and mission of eliminating racial discrimination in higher education admissions." ROA.1353. UT's apparent argument—that SFFA lacks standing because it accidentally formed a non-membership organization in its articles of incorporation—has no factual or legal basis.

Finally, UT cannot credibly distinguish this case from *Harvard* or *UNC*. UT claims that these courts never "consider[ed] the impact of SFFA's articles of incorporation on the standing analysis." UT-Br. 25. But that is wrong. Both Harvard and UNC submitted and discussed SFFA's articles of incorporation and relied on the same cases that UT does here. *See, e.g.*, Harvard Reply in Support of Motion to Dismiss at 3-4, 4 n.2, 6, *SFFA v. Harvard*, No. 14-cv-14176 (D. Mass.) (Dkt. 220) (noting that SFFA's articles of incorporation "state that it 'shall have no members'"); UNC Motion to Dismiss at 13-15, *SFFA v. UNC*, No. 14-cv-954 (M.D.N.C.) (Dkt. 107) (discussing

SFFA's Articles of Incorporation). And the *Harvard* and *UNC* courts were fully aware of the facts. *See, e.g.*, *Harvard*, 261 F. Supp. 3d at 105 & n.7 (noting that SFFA's bylaws "further specify that General Members are not 'members' within the meaning of the Virginia Nonstock Corporation Act"); *UNC*, 2018 WL 4688388, at *1 & n.1 (same). Even if Harvard and UNC had never made these arguments, these federal courts had "an independent obligation" to consider them. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). That none of these courts found UT's primary argument worth discussing in detail speaks to the weakness of the argument, not the thoroughness of the prior litigation.

> **B.     SFFA has associational standing even if the Court were to break new ground and extend the indicia-of-membership test to voluntary membership organizations.**

Even if this Court were to require SFFA to satisfy the indicia-of-membership test, SFFA still would have standing. The indicia-of-membership test is not a demanding inquiry designed to restrict access to the federal forum. It is a "functional analysis to determine whether the nature of the relationship between the [organization] and the relevant interests of the individual[s]" who have been harmed "satisfie[s] the goals of the constitutional standing requirement." *Friends of the Earth*, 129 F.3d at 828.

SFFA "'easily satisf[ies]'" that test for several reasons.[1] *UNC*, 2018 WL 4688388, at *3-6; *Harvard*, 261 F. Supp. 3d at 110-11.

*First*, SFFA's Standing Members "testified in [their depositions and through declarations] that they [are] members of [SFFA]" and that SFFA is acting on their behalf. *Friends of the Earth*, 129 F.3d at 829; *see* ROA.1399 [¶¶6-8]; ROA.1402 ¶¶6-8; ROA.1280:1-8; ROA.1291:15-1292:1. That alone is dispositive. *Compare Citizens Coal Council v. Matt Canestrale Contracting, Inc.*, 40 F. Supp. 3d 632, 643 (W.D. Pa. 2014) (approving standing because "[e]ach of the Standing Witnesses testified at their depositions that they joined [the organization] so that the lawsuit could be filed" and "knew that [the organization] was filing this lawsuit on their behalf"), *with Fund Democracy, LLC v. SEC*, 278 F.3d 21, 26 (D.D.C. 2002) (rejecting standing because no members could attest that the organization "represented their views and that they approved of [its] activities").

*Second*, SFFA has a "clearly articulated and understandable membership structure," *Friends of the Earth*, 129 F.3d at 829, under which the Standing Members

---

[1] *Funeral Consumers Alliance, Inc. v. Service Corp. International* did not create a rigid three-part test for showing indicia of membership via dicta in a footnote. 695 F.3d 330, 344 n.9 (5th Cir. 2012); *see Disability Rights Pa. v. Pa. Dep't of Human Servs.*, 2020 WL 1491186, at *7 (M.D. Pa. 2020) ("[N]othing in *Hunt* suggests that [its] list of considerations is exhaustive."); *Flyers Rights Educ. Fund, Inc. v. U.S. Dep't of Transp.*, 957 F.3d 1359, 1362 (D.C. Cir. 2020) (listing courts that have found associational standing "even though [the organization] does not possess all three indicia of membership considered in *Hunt*"). UT is wrong to suggest otherwise.

qualify as members, *see supra* at 3-4. SFFA and its Standing Members thus are not colluding in a post-hoc attempt to "manufacture" standing. *See Wash. Legal Found. v. Leavitt* ("*WLF*"), 477 F. Supp. 2d 202, 208, 211 (D.D.C. 2007). UT cannot dispute that the Standing Members are members as defined by SFFA's bylaws.

*Third*, the Standing Members "voluntarily associated themselves with [SFFA], in contrast to the apple growers" in *Hunt*. *Friends of the Earth*, 129 F.3d at 829. Neither Standing Member was coerced into joining SFFA. Rather, they voluntarily joined SFFA and agreed to participate in this lawsuit. ROA.1399 [¶¶6-8]; ROA.1402 [¶¶6-8]; ROA.1278:22-1279:15 ("My mother brought [SFFA] to my attention," I "research[ed] . . . the organization," and then "[m]y mother with my approval paid the membership fee and we signed up and became members."); ROA.1288:21-1289:10 ("I heard about [SFFA] from my dad," "looked it up online and then searched around a bit—spent too much time on the Internet and then I joined online."). Thus, SFFA's standing is even stronger than the Commission's in *Hunt*, which forced apple growers and dealers to "finance[] the Commission through mandatory assessments." *Friends of the Earth*, 129 F.3d at 829; *see Hunt*, 432 U.S. at 344-45. This voluntariness provides additional assurance that SFFA genuinely represents the Standing Members. *Id.*; *Citizens Coal*, 40 F. Supp. 3d at 641 n.10 (approving standing where "the Standing Witnesses came to be members of [the organization] . . . after learning about the organization, generally through community meetings, grassroots outreach events, or the website").

*Fourth*, this lawsuit "clearly is within [SFFA's] central purpose, and thus within the scope of reasons that [the Standing Members] joined the organization." *Friends of the Earth*, 129 F.3d at 829. When the Standing Members voluntarily associated with SFFA, they were well aware of SFFA's mission. ROA.1278:24-1279:1; ROA.1289:4-10. Before they became standing members, SFFA discussed the nature of this lawsuit with them, and they agreed to participate in the litigation. ROA.1265:3-1266:17; ROA.1399 [¶¶6, 8]; ROA.1402 [¶¶6, 8]. Both Standing Members understood the consequences of their membership and chose to go forward. *Id.* Thus, not only do the Standing Members support SFFA, but they specifically support *this* action. *See Citizens Coal*, 40 F. Supp. 3d at 641 (approving standing where the organization "met with the Standing Witnesses prior to filing . . . this action and obtained their approval to bring this action"); *cf. Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. 83-cv-513, 1984 WL 6618, at *40-41 (D.N.J.) (rejecting standing because injured members had merely supported prior, unrelated litigation).

*Fifth*, SFFA's members "finance [SFFA's] activities" through membership dues and other donations. *Friends of the Earth*, 129 F.3d at 829; *cf. WLF*, 477 F. Supp. 2d at 209 (rejecting standing where, among other things, the organization "made no showing that [the individuals] in any way . . . financially support" the organization). SFFA has received thousands of dollars in membership fees and donations from its members. ROA.1356; ROA.1104; ROA.1133. UT urges the Court to impose a higher bar, such that the members must provide all or most of the organization's funding. UT-Br. 30-32.

But no court has ever imposed such a requirement. Indeed, courts have found indicia of membership even when the constituents provided *no* funding. *See, e.g.*, *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (approving standing for a group "funded primarily by the federal government, and not by its constituents"); *Sylvia's Haven, Inc. v. Mass. Dev. Fin.*, 397 F. Supp. 2d 202, 207-08 (D. Mass. 2005) (approving standing for an organization that represented homeless children). UT's proposed test is not only legally unsupported but would shut out many organizations that serve the poor and underprivileged, as their members rarely can provide funding needed to finance an association's activities. *See id.*

That SFFA accepts donations from non-profit organizations proves nothing. SFFA is a relatively young organization, and its members are students and their families. When the NAACP formed, it "initially set membership dues at one dollar for associates and two dollars for contributors" to "attract mass support," and it survived "due in large measure to external financial support." Shawn L. Alexander, *An Army of Lions: The Civil Rights Struggle Before the NAACP*, xv (2012). Indeed, the most well-known membership organizations in the country still rely heavily on institutional donations. *See, e.g.*, NAACP 2018 Annual Report 36-43, https://bit.ly/3HrCPb5 (identifying 27 corporations and 13 nonprofit foundations that each gave NAACP more than $100,000 in 2018, including four that gave more than a million dollars); Sierra Club 2019 Annual Report, bit.ly/3tYxPUH (identifying 502 nonprofit foundations that donated to the

Sierra Club in 2019). No one claims that these groups do not represent the interests of their members because of the substantial institutional donations they receive.

*Sixth*, SFFA's members participate in "elect[ing] the governing body of the organization" through a member-elected board of director. *Friends of the Earth*, 129 F.3d at 829. Under SFFA's election procedures, the entire membership is invited to run for the director position; interested candidates submit a short statement of why they would like to serve on SFFA's board; each candidate's personal statement is provided to the members; and SFFA's members then vote for the director of their choice. ROA.1348-49. SFFA has had multiple member-elected directors, including Joe Zhou[2] (2015-2017), Alex Chen (2017-2019), and Hua "Eva" Guo (2019-2021). ROA.1407. These member-elected directors have given members even more of "a direct voice in [SFFA's] decision-making, including the management and direction of ongoing litigation." ROA.1334. No court has ever required that an organization's members elect the entire board of directors to show indicia of membership. Indeed, courts regularly find associational standing when the members had no power to elect *any* of the directors. *See Or. Advocacy Ctr.*, 322 F.3d at 1111-12; *Citizens Coal*, 40 F. Supp. 3d at 641-42; *Flyers Rights Educ. Fund*, 957 F.3d at 1361-62; *AARP v. EEOC*, 226 F. Supp. 3d 7, 17 (D.D.C. 2016).

---

[2] After Mr. Zhou's term expired, he was chosen to be one of the Board-Elected Directors. *See* ROA.1407.

UT argues that SFFA is "controlled by founder Edward Blum." UT-Br. 18. But that is not true. SFFA is controlled by its five-person Board of Directors, only one of whom is Mr. Blum. ROA.1342-44; ROA.1406-07. The Board appointed Mr. Blum to his position as President of SFFA, but he "may be removed [by the Board of Directors] with or without cause at any time."[3] ROA.1344. Nor are SFFA's members denied a "meaningful opportunity to participate in SFFA's operations." UT-Br. 30. To the contrary, SFFA's president is "in constant communication with the membership through phone and email and receive[s] dozens of . . . suggestions and ideas in any given month on a one-to-one basis." ROA.1263:15-18. SFFA's members "can and often do petition or encourage SFFA to undertake certain endeavors." ROA.1264:17-19. SFFA also regularly schedules members-only conference calls "where members can ask questions, provide guidance, and comment on SFFA's activities and priorities." ROA.1409. Nothing requires SFFA to create the formal structures for member input, such as polling and committees, that UT demands. UT-Br. 29-30.[4]

---

[3] SFFA's four board-elected directors are not "permanent" directors. UT-Br. 28; *see* ROA.1258:24-1259:10; ROA.1247:15-1248:4. They serve two-year terms and must be reappointed by the Board of Directors. ROA.1342.

[4] By contrast, environmental groups like the NRDC and the Environmental Defense Fund, which regularly sue on behalf of their members, have "virtually no contact with the members," "do not consult with or even know the members," and often "'cold-call[]' membership lists" to find standing members. Ann E. Carlson, *Standing for the Environment*, 45 UCLA L. Rev. 931, 961-62 (1998).

*Seventh*, SFFA's standing members have "control" over this litigation. *Citizens Coal*, 40 F. Supp. 3d at 639-40. If all the standing members "chose to terminate their membership in [SFFA], that would in effect terminate this litigation as associational standing would then be lacking." *Id.* at 641. Their ability to resign is a powerful mechanism of control over SFFA. *Compare id.* at 643 (approving standing because "the Standing Witnesses here do possess the means to influence the priorities and activities that [the organization] has undertaken, specifically, through this litigation, as there would be no lawsuit without the Standing Witnesses"), *with Am. Legal Found. v. FCC*, 808 F.2d 84, 87-88, 92 (D.C. Cir. 1987) (rejecting standing where a nonprofit media law center sought to represent "all members of the public who regularly watch ABC News").

SFFA's leaders also are not simply "'concerned bystanders'" with no connection to the organization's mission. UT-Br. 29. Director Abigail Fisher was denied admission under a race-based admissions system; Directors Richard Fisher and Joe Zhou are parents whose children were denied admission under race-based systems; and Director Hua "Eva" Guo is a parent whose children will soon be subject to this type of discrimination because of their race. ROA.1358-61; ROA.1364-65. Indeed, SFFA board members all have spoken eloquently about how they and their children have been harmed by race-based preferences in higher education. ROA.1361; ROA.1364-65; ROA.1413. To describe SFFA as nothing more than Edward Blum's one-man vendetta against UT, *see* UT-Br. 18, is not only untrue but offensive to SFFA's board and the

tens of thousands of students and parents who joined and support SFFA. *Cf. Hundreds Gather for Dueling Rallies Ahead of Trial Challenging Harvard Admissions*, The Harvard Crimson (Oct. 15, 2018), bit.ly/3dRSFgj.

In sum, the record demonstrates that SFFA has associational standing even under UT's "indicia-of-membership" test. The Standing Members were injured by UT's admissions policies, voluntarily became SFFA members, want SFFA to represent them, support SFFA's mission, are involved in this litigation, and financially support SFFA through membership fees. Nothing more is required to meet the indicia-of-membership test.

### C.    SFFA's members have standing to sue in their own right.

The Intervenors argue that SFFA lacks standing because the complaint doesn't allege that "the consideration of race within the admissions process led to [the Standing Members'] denial" of admission to UT or that the Standing Members would be admitted under a "process [that is] race-blind." Intervenors-Br. 17. As the district court properly recognized, this argument is foreclosed by Supreme Court precedent. ROA.1533-34.

In bringing its "equal protection challenge against [UT's] use of race in undergraduate admissions," SFFA alleges that UT denied its members "the opportunity to compete for admission on an equal basis." *Gratz*, 539 U.S. at 262; *see* ROA.174 [¶6], 213 [¶203], 214-15 [¶214], 216 [¶225], 220 [¶240]; ROA.1395 [¶¶4-5, 9]; ROA.1228 [¶¶20-21]; ROA.1398-99 [¶¶3, 6-7]; ROA.1401-02 [¶¶3, 6-7]; ROA.1280:1-3;

ROA.1291:16-17. After being denied admission, the Standing Members have "demonstrated that [they are] 'able and ready' to apply as a transfer student should [UT] cease to use race in undergraduate admissions." *Gratz*, 539 U.S. at 262; *see* ROA.1395 [¶¶7, 11]; ROA.1398 [¶5]; ROA.1280:9-12; ROA.1401 [¶5]; ROA.1292:2-5. SFFA "therefore has standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions." *Gratz*, 539 U.S. at 262.

Given this binding precedent, neither Harvard nor UNC disputed that SFFA's members had standing in nearly identical cases, and the courts in those cases all easily found standing. *See Harvard*, 980 F.3d at 183-84; *Harvard*, 261 F. Supp. 3d at 107 n.9, 109-11; *UNC*, 2018 WL 4688388, at *3-6. That is why UT similarly makes no such challenge here.

Indeed, the Intervenors' argument is particularly perplexing after *Fisher*. There, Ms. Fisher "filed suit alleging that [UT's] consideration of race as part of its holistic-review process disadvantaged her and other Caucasian applicants." *Fisher v. Univ. of Tex. at Austin* ("*Fisher II*"), 136 S. Ct. 2198, 2207 (2016). The Supreme Court twice found that Ms. Fisher had standing to bring her claims against UT. *Fisher v. Univ. of Tex. at Austin* ("*Fisher I*"), 570 U.S. 297, 307-15 (2013); *Fisher II*, 136 S. Ct. at 2208-15; *see also Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 640 (5th Cir. 2014) (plaintiff had "standing . . . to challeng[e] the injury she alleges she suffered—the use of race in UT Austin's admissions program for the entering freshman class of Fall 2008"); *Fisher v. Univ. of Tex. at Austin*, 631 F.3d 213, 217 (5th Cir. 2011) (plaintiff had "standing to challenge their

rejection and to seek money damages for their injury"). As the court below properly recognized, "[c]onsidering that *Fisher* is binding precedent, . . . SFFA must also have standing to bring these claims." ROA.1533.

## II.     SFFA's claims are not barred by claim preclusion.

### A.     SFFA is not identical to or in privity with Abigail Fisher.

As explained, SFFA-Br. 22-24, the Supreme Court in *Taylor v. Sturgell*, identified only six exceptions to the rule against nonparty preclusion. 553 U.S. 880, 893-95 (2008). "These six exceptions … constitute an exhaustive list." *Duckett v. Fuller*, 819 F.3d 740, 745 (4th Cir. 2016); *see also Grayson v. Warden, Comm'r, Ala. Doc*, 869 F.3d 1204, 1224 (11th Cir. 2017) (same); *Doe v. Hesketh*, 828 F.3d 159, 172 (3d Cir. 2016) (same). UT never claims that it can satisfy any of the *Taylor* exceptions. UT-Br. 34-42. That should end the matter. SFFA-Br. 25-26.

UT argues that *Taylor*'s six categories are not exclusive because the Supreme Court said, in a footnote, that its list was not a "definitive taxonomy." 553 U.S. at 893 n.6. But this footnote merely explained that "the established grounds for nonparty preclusion" could be "organized differently." *Id.* (citing various treatises). Regardless of how they are organized, the *grounds* for nonparty preclusion are set in stone. The Court held in *Taylor* that "[t]he preclusive effects of a judgment in a federal-question case decided by a federal court should . . . be determined *according to the established grounds for nonparty preclusion described in this opinion.*" *Id.* at 904 (emphasis added). The Court painstakingly identified six categories of nonparty preclusion for a reason—because

nonparty preclusion implicates litigants' right to due process and is a non-merits threshold question that requires "'crisp rules with sharp corners.'" *Id.* at 901.

Moreover, UT ignores this Court's similar precedent. SFFA-Br. 24. The Fifth Circuit has found nonparty preclusion only in a precise list of "narrowly-defined circumstances." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990); *see* SFFA.Br 24 (listing cases). None of those circumstances are present here, and UT makes no attempt to distinguish this unbroken line of cases. UT-Br. 34-42.

UT also continues to misrepresent the facts. UT claims that Fisher and Blum "collectively controlled" the *Fisher* lawsuit. UT-Br. 34-35. That is wrong. Fisher controlled her own lawsuit. SFFA-Br. 29. UT also claims that Fisher and Blum "control" SFFA. UT-Br. 35. That too is wrong. SFFA is controlled by its five-person board of directors. SFFA-Br. 28-29. Indeed, UT never disputes that the three other directors "can outvote Mr. Blum and Ms. Fisher on every issue and, if desired, remove them from their positions on the Board of Directors and as SFFA officers." SFFA-Br. 28. Nor does UT produce "a shred of evidence that the three directors are somehow beholden to Ms. Fisher and Mr. Blum." *Id.* UT's theory of nonparty preclusion—that the involvement of individual directors in prior litigation binds an organization—contradicts longstanding law governing preclusion. SFFA-Br. 27-29.

Finally, UT hypothesizes that ruling for SFFA would mean that UT could be sued through "a new entity controlled by Fisher and Blum" called "SFFB" or "SFFC." UT-Br. 41. UT tilts at windmills. SFFA is a seven-year-old organization with a five-

person board of directors and more than 20,000 members. SFFA-Br. 2-5; ROA.1367; ROA.1394 [¶¶2-3]. SFFA and its members work tirelessly, through "[s]peeches, debates, forums, one-on-one outreach, media communications" and "litigation," to eliminate racial discrimination in higher education. ROA.1235:10-1236:1. It is no sham organization.

Regardless, it is UT's theory of nonparty preclusion—not SFFA's—that would cause serious problems. If UT prevails, district courts will be forced to deconstruct prior litigation to assess a host of immeasurable factors, including the plaintiff's legal strategy, her motivations for bringing the lawsuit, her interactions with others assisting her, and her communications with attorneys. This "all-things-considered balancing approach" would "spark wide-ranging, time-consuming, and expensive discovery tracking factors potentially relevant under seven- or five-prong tests." *Taylor*, 553 U.S. at 901. And "after the relevant facts are established, district judges would be called upon to evaluate them under a standard that provides no firm guidance." *Id.* Ruling for UT also would create serious due-process concerns, SFFA-Br. 22, 30-31, a problem UT never addresses. Just like Abigail Fisher, SFFA and its members are entitled to their own day in court.

## B. This case and *Fisher* do not have the same claim or cause of action.

UT recognizes that the facts that constitute a "transaction" or a "series" of transactions must be determined pragmatically, giving weight to such considerations as

"'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" UT-Br. 42 (quoting *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 396 (5th Cir. 2004)). Yet UT amazingly doesn't address *any* of these considerations. UT-Br. 42-47. That is no accident. It's because every relevant factor supports SFFA. *See* SFFA-Br. 32-34.

UT notes that the complaints in both cases "recount the same history of UT's admissions policy" before Ms. Fisher filed her complaint in 2008. UT-Br. 43. But these "[o]bservations of factual similarity" are irrelevant, *Petro-Hunt, LLC*, 365 F.3d at 396, and cannot overcome the significant differences between the two cases. The cases involve different plaintiffs, different victims of discrimination, different time periods, different uses of race by UT, different assessments of and results from race-neutral alternatives, different violations of the Equal Protection Clause, and different requested forms of relief. SFFA-Br. 35.

UT argues that SFFA has not shown factual differences that "establish new legal or factual conditions." UT-Br. 45-46. But SFFA has no such obligation, SFFA-Br. 38, a point UT never disputes, UT-Br. 42-47. Yet SFFA could make that showing in any event. SFFA-Br. 38-43. Since 2008, UT has increased its reliance on race, engaged in racial balancing, and used race as a factor despite a dramatic change in racial diversity through race-neutral means. SFFA-Br. 39-43. These are significant changes, especially

because "the smallest of factual changes could doom UT's admissions process" under strict scrutiny, SFFA-Br. 38, something UT also never denies, UT-Br. 45-46.

Finally, UT argues that nothing in *Fisher II* "indicates that the normal rules of claim preclusion would not apply." UT-Br. 47. That is true, but irrelevant. The point is that *Fisher II* was not the last word on the legality of UT's use of race. The Supreme Court made clear that its decision in *Fisher II* has "limit[ed] . . . value for prospective guidance," and that UT has a "continuing obligation to satisfy the burden of strict scrutiny in light of changing circumstances." 136 S. Ct. at 2209-10. That means that SFFA can prevail without "'convincing the court that [*Fisher II*] was in error.'" UT-Br. 47 (quoting *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010)). SFFA will prove that UT's *current* use of race is unconstitutional. SFFA-Br. 43-44. Whatever occurred in 2008 when Ms. Fisher sued UT does not control SFFA's claims. SFFA's claims are not barred by claim preclusion.

## III.   SFFA's claims are not barred by issue preclusion.

UT's alternative argument that SFFA's claims are barred by issue preclusion fails for similar reasons. Issue preclusion, or collateral estoppel, applies when "in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005). As with claim preclusion, issue preclusion can apply only against "a party or a privy" because litigants have a "due process right to a

'full and fair opportunity to litigate an issue.'" *Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987).

As explained, SFFA was not a party to the *Fisher* litigation and was not in privity with Ms. Fisher. SFFA-Br. 22-31; *supra* 20-22. Accordingly, *Fisher* has no preclusive effect in this case. *Benson & Ford*, 833 F.2d at 1174.

Moreover, the issues at stake in this case are not "the same" as in *Fisher. Harvey Specialty & Supply*, 434 F.3d at 323. The Court's decision in *Fisher II* was "necessarily limited to the narrow question" whether UT violated the Constitution "at the time her application was rejected." *Fisher II*, 136 S. Ct. at 2210. Whether UT's interest in "student body diversity" was sufficient to satisfy strict scrutiny as of 2008, UT-Br. 48-49, is different from whether UT's interests are sufficient today, *see Fisher II*, 136 S. Ct. at 2209-10, 2215 (UT has a "continuing obligation to satisfy the burden of strict scrutiny in light of changing circumstances," "affirmance of the University's admissions policy today does not necessarily mean the University may rely on that same policy without refinement" in the future, and UT must "shape its admissions policy to satisfy strict scrutiny in the years to come"). Similarly, whether UT could "achieve diversity through the Top Ten Percent Plan and race-neutral holistic review" in 2008, UT-Br. 49, is different from whether UT needs to do so today, *see Fisher II*, 136 S. Ct. at 2209-10. Issue preclusion does not apply.

## CONCLUSION

This Court should reverse the district court.

Respectfully submitted,

 /s/ J. Michael Connolly

William S. Consovoy
Thomas R. McCarthy
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Students for Fair
Admissions, Inc.*

## CERTIFICATE OF SERVICE

I filed a true and correct copy of this brief with the Clerk of this Court via the

CM/ECF system, which will notify all counsel.


Dated: January 10, 2022                          _/s/ J. Michael Connolly_

                                                 *Counsel for Students for Fair*
                                                 *Admissions, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) because it contains 6,406 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced font using Microsoft Word 2016 in 14-point Garamond font.

Dated: January 10, 2022              */s/ J. Michael Connolly*

*Counsel for Students for Fair Admissions, Inc.*