# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2022

Lyle W. Cayce
Clerk

No. 21-50715

---

STUDENTS FOR FAIR ADMISSIONS, INCORPORATED,

*Plaintiff—Appellant,*

*versus*

UNIVERSITY OF TEXAS AT AUSTIN; JAMES B. MILLIKEN, *Chancellor of the University of Texas System in his Official Capacity*; STEVEN LESLIE, *Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity*; DANIEL H. SHARPHORN, *Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity*; JAY HARTZELL, *Interim President of the University of Texas at Austin in his Official Capacity*; BOARD OF REGENTS OF THE TEXAS STATE UNIVERSITY SYSTEM; DAVID J. BECK, *Member of the Board of Regents in his Official Capacity*; CHRISTINA MELTON CRAIN, *Member of the Board of Regents in her Official Capacity*; KEVIN P. ELTIFE, *Member of the Board of Regents in his Official Capacity*; R. STEVEN HICKS, *Member of the Board of Regents in his Official Capacity*; JODIE LEE JILES, *Member of the Board of Regents in his Official Capacity*; JANIECE LONGORIA, *Member of the Board of Regents in her Official Capacity*; NOLAN PEREZ, *Member of the Board of Regents in his Official Capacity*; KELCY L. WARREN, *Member of the Board of Regents in his Official Capacity*; JAMES C. (RAD) WEAVER, *Member of the Board of Regents in his Official Capacity*; DANIEL JAFFE, *Interim Executive Vice President and Provost*; RACHELLE HERNANDEZ, *Senior Vice Provost for Enrollment Management and Student Success*; MIGUEL WASIELEWSKI, *Executive Director for Office of Admissions*,

No. 21-50715

*Defendants—Appellees,*

THE BLACK STUDENT ALLIANCE; THE TEXAS ORANGE JACKETS; TEXAS NAACP; ADAYLIN ALVAREZ; MORGAN BENNETT; LIZ KUFOUR; BRIANNA MALLORIE MCBRIDE; DESIREE ORTEGA-SANTIAGO; NIMA RAHMAN; ALEXANDRA TRUJILLO; ROSALEEN XIONG,

*Intervenor Defendants—Appellees.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-763

---

Before KING, JONES, and DUNCAN, *Circuit Judges*.

STUART KYLE DUNCAN, *Circuit Judge*:

Students for Fair Admissions, Inc. (SFFA), a nonprofit organization committed to ending race discrimination in higher-education admissions, sued the University of Texas at Austin (UT)[1] over its use of race in admitting students. The district court concluded SFFA has standing but dismissed its claims as barred by *res judicata*. It reasoned that SFFA's claims were already

---

[1] Defendants are the University of Texas at Austin; the Board of Regents of the University of Texas System; James B. Milliken, Chancellor of the University of Texas System; Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of Texas System; Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of Texas System; Jay Hartzell, President of the University of Texas at Austin; David J. Beck, Christina Melton Crain, Kevin P. Eltife, R. Steven Hicks, Jodie Lee Jiles, Janiece Longoria, Nolan Perez, Kelcy L. Warren, and James C. "Rad" Weaver, as members of the Board of Regents; Daniel Jaffe, Interim Executive Vice President and Provost; Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student Success; and Miguel Wasielewski, Executive Director for Office of Admissions. We collectively refer to Defendants as "UT."

No. 21-50715

litigated in a prior challenge to UT's admissions policies. *See Fisher v. Univ. of Tex. (Fisher II)*, 579 U.S. 365 (2016); *Fisher v. Univ. of Tex. (Fisher I)*, 570 U.S. 297 (2013). We agree that SFFA has standing, but we disagree that *res judicata* bars its claims. The parties here are not identical to or in privity with those in *Fisher*, and this case presents different claims. Accordingly, we reverse the district court's judgment and remand for further proceedings.

I.

A.

Before 1997, UT used race in deciding which students to admit. After we held the practice unconstitutional, UT stopped. *See Hopwood v. Texas*, 78 F.3d 932, 948, 955 (5th Cir. 1996). From 1998 to 2004, UT instead used a facially race-neutral process to evaluate applicants not automatically admitted under the "Top Ten Percent Plan," which the legislature enacted in 1997.[2] In 2004, UT swiftly reintroduced race into admissions after the Supreme Court sanctioned its limited use in *Grutter v. Bollinger*, 539 U.S. 306 (2003). *See Fisher II*, 579 U.S. at 395 (Alito, J., dissenting) ("UT leapt at the opportunity to reinsert race into the process.").

In 2008, Abigail Fisher, a white high school senior who was denied admission, challenged UT's admissions policy under the equal protection clause and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* Fisher received outside help in her lawsuit. A nonprofit legal-defense foundation, the Project on Fair Representation (PFR), covered her legal fees. Edward Blum, PFR's executive director and a longtime family friend,

---

[2] The plan requires UT to admit all Texas seniors who rank in the top ten percent of their high school class. Tex. Educ. Code Ann. § 51.803 (West 1997).

recommended attorneys for Fisher and served as a "conduit" between her and them. Fisher, however, retained ultimate control over her case.

In 2016, the Supreme Court rejected Fisher's claims and held that UT's admissions practices, as of 2008, satisfied strict scrutiny. *See Fisher II*, 579 U.S. at 388. The Court's inquiry was "limited to the narrow question" of whether Fisher "was denied equal treatment at the time her application was rejected." *Id.* at 380. The Court stressed that, moving forward, UT may "not necessarily . . . rely on that same policy without refinement" and has an "ongoing obligation to engage in constant deliberation and continued reflection regarding its admissions policies." *Id.* at 388.

## B.

Formed in 2014, SFFA is a registered 501(c)(3) organization incorporated in Virginia. Its stated purpose is "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law, through litigation and any other lawful means."

SFFA's governing documents set forth membership policies, organizational structure, and leadership positions. Its articles of incorporation provide that, pursuant to the Virginia Nonstock Corporation Act (the "Act"), SFFA "shall have no members." Its initial bylaws, adopted contemporaneously with the articles, provide for "no members within the meaning of the Act" but for "one class of affiliate members with rights, privileges, and obligations established by the Board of Directors." "Affiliate members," the bylaws explain, "have no voting rights and are not members within the meaning of the Act." Affiliate membership is open to "[a]ny individual who seeks to support the purposes and mission of the Corporation . . . , subject to any additional standards that may be set from time to time by the Board." The bylaws provide for no fewer than three but no more than five directors, to be elected "by an affirmative vote of a majority

of the directors then in office." At its founding, SFFA's directors were Blum, Fisher, and Fisher's father Richard.

In SFFA's early stages, individuals could become affiliate members by submitting identifying information and expressing an intent to join. To encourage participation and aid recruitment, SFFA did not require membership fees or dues. Membership grew steadily by the hundreds in its first year, before exploding to 20,000 members in June 2015. To account for this rapid growth, SFFA amended its bylaws to provide for "one class of members, referred to as General Members, which shall not be 'members' within the meaning of the Act and shall have only the rights specifically set forth in these Bylaws." SFFA also began requiring a one-time assessment of $10 as membership dues. And, to give members "a direct voice in [SFFA's] decision-making, including the management and direction of ongoing litigation," SFFA expanded its board to five directors, one of whom would be elected by its members.

SFFA's current board consists of Blum, Fisher, Fisher's father, Joe Zhou, and Eva Guo. Each is serving a two-year term. Blum also serves as SFFA's president and is responsible for "day-to-day operations, membership recruitment, and efforts to publicize its mission." Fisher also serves as secretary and "is responsible for keeping an accurate record of the proceedings of all [board] meetings." Fisher's father also serves as treasurer and "is responsible for the financial management of the organization." Mr. Zhou is a parent of a child who experienced racial discrimination in applying to college. And Ms. Guo is a parent of younger children who fears they will suffer racial discrimination in the admissions process. Collectively, the board manages SFFA's business and affairs, including its litigation.

## C.

In July 2020, SFFA sued UT, claiming the use of race in its admissions policy violates the Fourteenth Amendment, sections 1981 and 1983, and Title VI. *See* U.S. Const. amend. XIV, § 1, cl. 4; 42 U.S.C. §§ 1981, 1983, 2000d *et seq.* It sued on behalf of its members, including two white students who were denied admission to UT and who are able and ready to transfer there if UT stops discriminating.

SFFA alleges UT's current admissions policy has "changed dramatically" from the 2008 policy challenged in *Fisher*. It alleges "there has been a steady increase in racial diversity since 2008," as 51% of students were white in 2008 and only 36% of students were white in 2018. It also claims that "direct statistical evidence" shows UT "racially balances its entering freshman class to ensure a specific proportion[]" of black students, *i.e.*, a "quota." Specifically, UT's admitted class was 5–6% black in each of the last ten years. Further, while UT previously reported that "racial/ethnic status" was merely a factor "considered" in admissions decisions, UT now characterizes it as a "very important" factor.

Over SFFA's objection, the district court bifurcated discovery. It allowed UT to take discovery on its anticipated standing and *res judicata* challenges, to be raised in dispositive motions, but prohibited SFFA from taking discovery on the merits of its claims. UT deposed SFFA and its two members who were denied admission, and SFFA produced documents and responded to interrogatories.

In March 2021, UT moved for summary judgment or dismissal based on lack of standing, *res judicata*, and collateral estoppel. UT argued SFFA was not a traditional membership organization because it did not have "statutory members" under Virginia law and so lacked standing. UT also argued that *res judicata* and collateral estoppel barred this suit because it

No. 21-50715

overlaps with *Fisher*. A group of eight minority UT students and three organizations (Intervenor Defendants) intervened and moved to dismiss on the ground that SFFA lacks standing.[3]

The district court granted the motions in part and denied them in part. *Students for Fair Admissions, Inc. v. Univ. of Tex. (SFFA)*, No. 1:20-CV-763-RP, 2021 WL 3145667 (W.D. Tex. July 21, 2021). The court ruled that SFFA has associational standing as a "traditional membership organization," *id.* at *5–7, and that two of SFFA's members would have standing to challenge UT's admissions policy, *id.* at *6–7. The court therefore denied the motions to dismiss premised on standing. But the court held *res judicata* barred SFFA's claims, finding the plaintiffs in this case and the *Fisher* litigation are in privity and the causes of action in the two cases are the same. *Id.* at *8–12. The court thus granted summary judgment, dismissing SFFA's claims with prejudice. *Id.* at *12. SFFA timely appealed.

## II.

We review summary judgments *de novo*, applying the same standards as the district court. *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 682 (5th Cir. 2020) (citation omitted); Fed. R. Civ. P. 56(a). We also review *de novo* the district court's rulings on standing and *res judicata*. *See Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022) (citations omitted); *SED Holdings, L.L.C. v. TM Prop. Sols., L.L.C. (In re 3 Star Props., L.L.C.)*, 6 F.4th 595, 604 (5th Cir. 2021) (citations omitted).

---

[3] The Intervenor Defendants are Adaylin Alvarez, Morgan Bennett, Brianna Mallorie McBride, Liz Kufour, Desiree Ortega-Santiago, Nima Rahman, Alexandra Trujillo, Rosaleen Xiong, the Texas NAACP, the Black Student Alliance, and the Texas Orange Jackets.

No. 21-50715

## III.

Seeking reversal, SFFA contests the district court's *res judicata* ruling. Seeking affirmance on alternate grounds, UT and the Intervenor Defendants contest the district court's ruling that SFFA has standing.[4] We address standing first because it is jurisdictional. *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1014 n.18 (5th Cir. 2019) (citations omitted).

## A.

The district court ruled that SFFA has associational standing. *SFFA*, 2021 WL 3145667, at *5–7. An association has standing to bring claims on behalf of its members when (1) individual members would have standing,[5] (2) the association seeks to vindicate interests germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the individual members' participation. *See, e.g.*, *Sw. Elec. Power Co.*, 920 F.3d at 1014 n.18 (citing *Assoc. of Am. Phys. & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010)).[6] UT and the Intervenor Defendants attack the district court's ruling on two different grounds. Neither has merit.

---

[4] UT and the Intervenor Defendants were not required to cross-appeal because their arguments regarding SFFA's standing, if accepted, would be an alternate ground for affirmance. *See, e.g.*, *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435–36 (1924); *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350–51 (5th Cir. 2021); *see also* 15A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3904 (3d ed.), Westlaw (database updated Apr. 2022) ("[A]rguments that support the judgment as entered can be made without a cross-appeal.").

[5] An individual has standing to sue if his injury is traceable to the defendant and a ruling would likely redress it. *See* U.S. Const. art. III, § 2; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

[6] Alternatively, an association may show it has "organizational standing" to sue in its own right. *See, e.g.*, *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th

No. 21-50715

UT argues that SFFA cannot sue on behalf of its members because it is not a "traditional membership organization." It points out that SFFA's articles of incorporation state, "[t]he Corporation shall have no members." For that reason, SFFA contends that SFFA must satisfy the threshold "indicia-of-membership" test, which it claims SFFA fails. *See, e.g.*, *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 344–45 (1977)) (discussing indicia-of-membership test).[7] The district court correctly rejected this argument. *See SFFA*, 2021 WL 3145667, at *5–6.

SFFA is a traditional membership organization. When it sued in 2020, "SFFA was a validly incorporated 501(c)(3) nonprofit with [thousands of] members who joined voluntarily to support its mission of 'defend[ing] human and civil rights secured by law, including the right of individuals to equal protection under the law." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard II)*, 980 F.3d 157, 184 (1st Cir. 2020), *cert. granted*, 142 S. Ct. 895 (2022) (first brackets added). Its amended bylaws provide for a single class of "General Members," who pay membership dues and elect one of SFFA's five directors. In light of that structure—and in agreement with every other court to consider the issue, including the district

---

Cir. 2020) (citation omitted). The district court did not address that kind of standing and neither do we.

[7] Under the indicia-of-membership test, we consider whether an organization's purported "members" (1) elect the organization's leaders, (2) serve in the organization's leadership, (3) finance the organization's activities, (4) associate voluntarily with the organization, and (5) provide sworn testimony of membership. *See Hunt*, 432 U.S. at 344–45; *Funeral Consumers All.*, 695 F.3d at 344 n.9.

court here—we "conclude that SFFA is a valid membership organization and applying an indicia of membership test to SFFA is unwarranted." *Ibid.*[8]

UT responds by making the novel argument that SFFA's bylaws conflict with its articles of incorporation and, therefore, the bylaws cannot create valid members under Virginia law. Relying on our decision in *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826 (5th Cir. 1997), UT thus argues that SFFA is not a traditional membership organization. We disagree.

*Friends of the Earth* is inapposite. There, we applied the indicia-of-membership test to a nonprofit corporation that had violated its own bylaws and D.C. law by failing to set membership requirements. *Id.* at 827, 829. The corporation merely treated "those who gave a donation" as "members." *Id.* at 827.[9] That case is not like this one. It is undisputed that SFFA complied with its bylaws in creating its members. As the district court explained, "SFFA's bylaws state that it will have members, whereas in *Friends of the Earth* the plaintiff's bylaws provided that its board of directors would set membership requirements—which they never did." *SFFA*, 2021 WL 3145667, at *6.

UT stresses that SFFA's articles state it "shall have no members," but UT misunderstands that statement. It refers to statutory "members"

---

[8] *See also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.) (Harvard I)*, 261 F. Supp. 3d 99, 103–11 (D. Mass. 2017), *aff'd, Harvard II*, 980 F.3d at 184; *Students for Fair Admissions, Inc. v. Univ. of N.C.*, No. 14-CV-954, 2018 WL 4688388, at *3–6 (M.D.N.C. Sept. 29, 2018), *cert. before judgment granted*, 142 S. Ct. 895 (2022); *SFFA*, 2021 WL 3145667, at *5–6.

[9] We nonetheless found the indicia-of-membership test satisfied because the corporation's "purported members" elected its governing body, financed its activities, and "voluntarily associated themselves with [the organization]." *Id.* at 829.

under relevant Virginia law.[10] UT cites no authority that Virginia nonprofit corporations cannot create other membership classes through their bylaws and give those membership classes certain rights. *See id.* § 13.1-823(B) (providing corporation's "bylaws . . . may contain any provision that is not inconsistent with law or the articles of incorporation"). As the district court found, SFFA's bylaws did just that by creating "one class of members, referred to as General Members, who shall not be 'members' within the meaning of the [Virginia Nonstock Corporation] Act." *SFFA*, 2021 WL 3145667, at *6. UT is thus mistaken that SFFA's bylaws conflict with its articles or Virginia law. So, we have no occasion to apply the indicia-of-membership test under *Friends of the Earth*.

The Intervenor Defendants take a different tack. They argue SFFA's two members lack Article III injury because they merely allege "they are white, were denied admission, and are willing to transfer [to UT]." This is insufficient, say the Intervenor Defendants, because unlike a racial set-aside or quota, the policy challenged here is a "holistic race-conscious admissions plan" that does not "*automatically* place white applicants on unequal footing." This argument is specious.

In an equal protection challenge to a race-conscious admissions policy, an applicant is injured by being denied the "opportunity to compete for admission on an equal basis." *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003).[11]

---

[10] *See* Va. Code Ann. § 13.1-819(A)(2)–(3) (requiring articles to state whether corporation will have "one or more classes of members" or "no members"); *id.* § 13.1-187 (providing corporation "may have one or more classes of members or may have no members").

[11] *See also Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (explaining "the 'injury-in-fact' [from a racial set-aside] is the inability to compete on an equal footing in the bidding process, not the loss of a contract" (citation omitted)); *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017)

No. 21-50715

SFFA's complaint contains detailed allegations that UT's current admissions policy "gives special preference to applicants who fall within racial categories that the university considers 'underrepresented,'" such as blacks and Hispanics, thereby "diminish[ing] the chances of admission" for whites and Asian-American applicants. It also alleges that UT uses its "holistic admissions process" as a cloak to pursue "racial balancing" that amounts to a "quota" of admitted black students. Finally, it alleges that at least two of its members are white, applied to UT but were not admitted, and were thereby "denied the opportunity to compete for admission to [UT] on equal footing with other applicants on the basis of race or ethnicity because of [UT's] discriminatory admissions policies." Those students "are ready and able to apply to transfer to [UT] when it stops discriminating against applicants on the basis of race and ethnicity."

These allegations establish Article III standing. Indeed, they are identical to allegations held sufficient to create standing in *Gratz*. There, the Supreme Court found the plaintiff had standing to seek prospective relief against the University of Michigan because he alleged he had "applied," had been "denied admission," and was "able and ready to apply as a transfer student should the University cease to use race in undergraduate admissions." *Gratz*, 539 U.S. at 262. Every other court to consider the issue has agreed that SFFA's members have standing. *See Harvard II*, 980 F.3d at 183 (holding SFFA's members have standing under *Gratz*); *Harvard I*, 261 F. Supp. 3d at 109–10 (same); *Univ. of N.C.*, 2018 WL 4688388, at *5 (same). And no court has drawn the distinction that the Intervenor Defendants press

---

(explaining "the gravamen of an equal protection claim is differential governmental treatment" (citations omitted)).

here—namely, between a racial set-aside or quota and a "holistic race-conscious admissions plan."

Nor will we. The Intervenor Defendants may sincerely believe that UT's "holistic" plan "may be beneficial to any UT . . . applicant—including whites and Asian-Americans." Br. of Intervenor-Defendants at 9 (quoting *Fisher II*, 136 S. Ct. at 2207).[12] But that belief has nothing to do with standing. For standing purposes, the only question at this stage is whether SFFA has adequately alleged that UT's race-conscious policy puts its white members on unequal footing with other applicants based on race. They have.

In sum, SFFA has associational standing to challenge UT's race-conscious admissions policy and the district court correctly denied the motions to dismiss based on standing.

## B.

We turn to the district court's *res judicata* holding. "The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 570 (5th Cir. 2021) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). The district court found SFFA's claims were barred by claim preclusion and so did not reach issue preclusion. *SFFA*, 2021 WL 3145667, at *12.

---

[12] The Intervenor Defendants' brief appears to quote from the Supreme Court itself, but the Court was quoting the district court, which was in turn quoting UT's own summary judgment motion. *See Fisher II*, 579 U.S. at 375 (quoting *Fisher v. Univ. of Tex.*, 645 F. Supp. 2d 587, 606 (W.D. Tex. 2009)). In other words, *Fisher II* did not conclude that UT's race-conscious admissions policy was "beneficial" to whites and Asian-Americans.

No. 21-50715

"Claim preclusion bars the litigation of claims that have been or should have been raised in an earlier suit." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) (citing *Petro–Hunt L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004)). The test for claim preclusion has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Ibid.* (quoting *Test Masters*, 428 F.3d at 571). The second and third elements are not disputed.

1.

As to the first element, the district court found SFFA is in privity with the *Fisher* plaintiffs because "Fisher and Blum both exerted control over the litigation in *Fisher* and exert control over this lawsuit as directors of SFFA." *SFFA*, 2021 WL 3145667, at *10. SFFA argues that Fisher's and Blum's personal involvement in *Fisher* cannot bind SFFA and that, even if it could, they do not control SFFA. We agree with SFFA.

A "basic premise of preclusion law" is that "[a] court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011) (citing Wright & Miller, *supra* note 3, § 4449). The Supreme Court has taken a "constrained approach to nonparty preclusion," *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008), recognizing only six exceptions, *see id.* at 893–95. One is relevant here: "a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered." *Id.* at 895 (cleaned up). Control for nonparty preclusion "requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action" and "have control over the opportunity to obtain review."

No. 21-50715

*Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987) (quoting *Hardy v. Johns–Manville Sales Corp.*, 681 F.2d 334, 339 (5th Cir. 1982)); *see also Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758 (1st Cir. 1994) (control is the power "to call the shots" (collecting sources)).

The identity-of-parties or privity requirement is not met where "a party appears in one action in an individual capacity and in a subsequent action in a representative capacity." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 973 (5th Cir. 1986) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 36 (1980)); *see Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990); *see also* WRIGHT & MILLER, *supra* note 3, § 4454 ("[L]itigation in one capacity, individual or representative, does not preclude relitigation in a different capacity, individual or representative."). And, specifically, the control exception to nonparty preclusion "cannot apply to a person who, as a party, controls litigation in one capacity, and then is involved in subsequent litigation in another capacity." WRIGHT & MILLER, *supra* note 3, § 4451.[13]

The district court erred in applying the control exception to nonparty preclusion in two key respects. First, it mistakenly rejected SFFA's argument about the different capacities in which Fisher and Blum acted in *Fisher* and act in this case. *See SFFA*, 2021 WL 3145667, at *9. SFFA cannot be precluded from bringing its own suit merely because one of its directors (Fisher) previously sued in her personal capacity, with the help of a second

---

[13] "Application of the control principle in these circumstances would defeat the basic perception that representative capacities must be held separate in order to ensure vigorous pursuit of litigation without concern about the possible impact on other interests." WRIGHT & MILLER, *supra* note 3, § 4451; *see also id.* § 4454 ("The rule against extending preclusion from litigation undertaken in one capacity to litigation in a different capacity is designed to free the representative to conduct each action for the best interests of the people who would benefit from that action.").

director (Blum).[14] The different capacities in which Fisher and Blum acted in *Fisher* (personal) compared to this case (directors of SFFA) makes the control exception to nonparty preclusion inapplicable. *See Clark*, 794 F.2d at 973; WRIGHT & MILLER, *supra* note 3, § 4454 ("[I]t is necessary to reject any attempt to establish preclusion on the ground that the same person who appears in different capacities fully participated in and controlled the prior action."); *id.* § 4460 ("[A] corporation cannot be bound [by a judgment] simply because a director, officer, or minor shareholder has lost an action pursued in an individual capacity.").[15]

Second, even if Fisher's and Blum's different capacities did not foreclose applying claim preclusion, the district court erred in finding that Fisher and Blum control SFFA. The court found that Fisher and Blum "control at least three, if not four, of the five board seats," *SFFA*, 2021 WL 3145667, at *10, because "there are five total . . . directors, one is Fisher's father, and the three collectively have a majority vote to direct any decisions from the board," *id.* at *9. Nothing in the record supports this finding. Fisher and Blum form only a minority, noncontrolling contingent of SFFA's five-member board. Absent evidence to the contrary, we presume the remaining three directors "will exercise independent judgment." *FDIC v. Henderson*,

---

[14] SFFA disputes the district court's finding that Blum "exerted sufficient control over *Fisher*." *SFFA*, 2021 WL 3145667, at *9. We need not address and so express no view on whether or to what extent Blum controlled the *Fisher* litigation.

[15] *See also Assurance Co. of Am. v. Kirkland*, 312 F.3d 186, 190 (5th Cir. 2002) (holding *res judicata* did not apply because prior judgment against corporation did not bind later action by its sole owner concerning coverage of same insurance policy); *Johnson v. City of Houston*, 444 F. App'x 26, 31 (5th Cir. 2011) (per curiam) (finding identity-of-the-parties element not met where plaintiff brought claims in first suit as executrix of estate and in second suit in individual capacity); RESTATEMENT (SECOND) OF JUDGMENTS § 59 cmt. e (1982), Westlaw (database updated Oct. 2021) ("[A] judgment for or against persons who are stockholders, members, or managers of a corporation does not in general bind or redound to the benefit of the corporation.").

61 F.3d 421, 431 (5th Cir. 1995). Because the parties in this case and *Fisher* are not identical or in privity, claim preclusion does not apply.

2.

Even if the parties were identical or in privity, the claims in this case differ from those in *Fisher*. "We use a transactional test to answer the 'same claim' question, barring the new claim if it arises from the same nucleus of operative facts as the prior claims." *ASARCO, L.L.C. v. Mont. Res., Inc.*, 858 F.3d 949, 956 (5th Cir. 2017) (citing *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000)); *see also Hous. Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016). "We consider 'whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations.'" *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 504 (5th Cir. 2020) (quoting *Oreck Direct LLC v. Dyson Inc.*, 560 F.3d 398, 402 (5th Cir. 2009)).

Under our transactional test, SFFA's claims are not the same as those in *Fisher*. First, the claims are not related in time and space. SFFA's standing members were denied admission in 2018 and 2019, whereas Fisher was denied admission in 2008. SFFA challenges UT's admissions policies used in 2018 and 2019, whereas *Fisher* concerned only the policies used in 2008. *Fisher II*, 579 U.S. at 380. As the Supreme Court has observed, "Claim preclusion generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1596 (2020) (quoting *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 600 (2016)).

Second, the operative facts are not the same. SFFA alleges that "[t]hings have changed dramatically since 2008," "there has been a steady increase in racial diversity since [then]," and "UT[] has increased its

No. 21-50715

reliance on race," citing data on the racial composition of each entering class at UT from 2008 to 2018. *See Test Masters*, 428 F.3d at 572 (claim preclusion did not apply where "the operative facts between the current litigation and the previous litigation are not the same" and the "the nucleus of facts in the current action concern[ed] allegations . . . that did not occur at the time of the previous action"); *cf. Steen v. Harvey*, 247 F. App'x 511, 514–15 (5th Cir. 2007) (per curiam) (applying *res judicata* where the claims were "based on *identical* facts occurring during the *same* time period"). SFFA alleges UT is employing a different policy than the one challenged in *Fisher*.

Third, the origin and motive of the claims are unrelated. The *Fisher* plaintiffs sought to recover damages for injuries they personally suffered from the denial of admission in 2008. *See Fisher v. Univ. of Tex.*, 631 F.3d 213, 217 (5th Cir. 2011). SFFA, however, seeks forward-looking relief: if it prevails, then its members can apply to UT under an admissions process that does not discriminate on the basis of race. Moreover, SFFA did not even exist when UT's admissions policies were challenged in *Fisher*. And given their significant factual differences, the two cases would not form a convenient trial unit. *See OJSC Ukrnafta*, 957 F.3d at 504 (citation omitted).

\*    \*    \*

Because the parties here and in *Fisher* are not identical or in privity, and because this case presents different claims, the district court erred in holding SFFA's lawsuit is barred by claim preclusion.[16]

---

[16] While the district court did not address issue preclusion, UT and the Intervenor Defendants claim the doctrine also bars SFFA's suit. We disagree. Because issue preclusion requires party privity and identical issues, *see Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326–27 (1979); *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009), our discussion above forecloses its application in this case.

No. 21-50715

## IV.

We REVERSE the district court's judgment and REMAND for further proceedings consistent with this opinion.